# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: BBRAFMAN@BRAFLAW.COM

BENJAMIN BRAFMAN

ANDREA ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
ALEX SPIRO

MARK M. BAKER
OF COUNSEL

MARC AGNIFILO
OF COUNSEL
ADMITTED IN N.Y. AND N.J.

October 22, 2015

**VIA ECF**

The Honorable Vernon S. Broderick
United States District Judge
40 Foley Square
New York, NY 10007

Re:     United States v. Ng Lap Seng, 15 Cr. 706 (VSB)

Dear Judge Broderick:

We write in response to the government's letter filed last night in anticipation of today's hearing deciding the government's appeal of Magistrate Judge Kevin N. Fox's determination, after a lengthy bail hearing and extensive argument by both sides, that "there are conditions that can be fashioned to permit the accused to be at liberty pending the disposition of the instant offense." 10/17/15 Bail Hearing at 66. Specifically, Judge Fox, one of the most seasoned and experienced Magistrate Judges in the Southern District of New York, found that the following conditions were sufficient to reasonably assure Mr. Ng's appearance during the pendency of this case:

- A $50 million personal recognizance bond secured by $20 million in cash and Mr. Ng's residence located at 240 East 47th Street, Apartments 2C and 2D in Manhattan;[1]
- Travel restricted to the Southern and Eastern Districts of New York;
- Surrender of all travel documents with no new applications;
- Strict Pretrial Services Supervision;

---

[1] The government's claim that this apartment was gifted to co-defendant Lorenzo is patently false. The deed is only in Mr. Ng's name.

BRAFMAN & ASSOCIATES, P.C.

- Home detention with GPS monitoring at Mr. Ng's residence (Mr. Ng may only leave his residence for medical treatment, counsel meetings and court appearances–all with prior notification to Pretrial Services); and
- Mr. Ng's presence at his residence is to be secured by the Guidepost Solutions[2] security company with the following provisions:
    - 24-hour armed former or off-duty law enforcement officers;
    - Two officers per shift;
    - One supervisory security professional overseeing and scheduling the security detail;
    - Security will be provided at the residence/building and whenever Mr. Ng leaves the building pursuant to bail conditions;
    - Guidepost will also provide, as needed, a security vehicle with driver, when he must travel to counsel's office, court or medical treatment; and
    - Guidepost agrees to communicate with Pre-Trial Services, the Court, and/or the U.S. Attorney's Office, as required by the Court.

As an initial matter, we note that Judge Fox's bail determination is consistent with the Supreme Court's recognition that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755, 107 S. Ct. 2095, 2105 (1987). Moreover, Judge Fox's ruling is also consistent with the Second Circuit's direction that a "court should bear in mind that it is only a limited group of offenders who should be denied bail pending trial." United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987).

In again seeking detention, the government repeats the same arguments rejected by Judge Fox. While counsel will fully respond to the government's arguments at today's hearing, we write now to address certain issues raised in the government's October 21, 2015 letter concerning the armed guard bail condition. Despite the fact that this condition has been approved by the Second Circuit and other judges in this District and the Eastern District of New York, the government argues in its letter that releasing Mr. Ng on this condition would be inappropriate because it would allow a wealthy defendant "to be released on the condition that he pay for a 'private jail.'" Although not specifically resolving the issue, the Second Circuit has aptly pointed out that this argument fails to consider that some wealthy defendants would have been initially granted bail if they were not as wealthy. See United States v. Sabhnani, 493 F.3d 63, 78 n.18 (2d Cir. 2007) ("The government has not argued and, therefore, we have no occasion

---

[2] Guidepost reputation in this field is above reproach and is run by Bart Schwartz, the former chief of the Criminal Division of the United States Attorney's Office for the Southern District of New York.

## BRAFMAN & ASSOCIATES, P.C.

to consider whether it would be "contrary to principles of detention and release on bail" to allow wealthy defendants "to buy their way out by constructing a private jail." We note, however, that in the instant case, defendants of lesser means, lacking the resources to flee, might have been granted bail in the first place." (citation omitted).[3] Tellingly, Jeff Yin – Mr. Ng's co-defendant of lesser means – was initially granted bail on the original Complaint by Magistrate Judge Sarah Netburn.[4]

Moreover, while the government relies on Judge Pauley's rejection of the armed guard condition in United States v. Cilins, Judge Pauley himself readily noted that "other judges in this district have found that an armed security guard may be sufficient to assure a defendant's appearance, even when he is a serious risk of flight." Cilins, No. 13 Cr. 315 (WHP), 2013 WL 3802012, at *3 (S.D.N.Y. July 19, 2013).[5] One of these jurists was Judge Jed Rakoff, who specifically rejected the government's argument in this case by noting:

---

[3] The government relies on the Second Circuit's dicta in United States v. Banki, 369 F. App'x 152, 154 (2d Cir. 2010) where the court, in a non-precedential summary order, stated that it "remain[ed] troubled" by the use of private security guards as a way to construct a private jail. We note, however, that the Banki order did not change the Second Circuit's analysis in Sabhnani, where, as noted above, the court upheld the use of private security guards as a bail condition. Moreover, the defendant in Banki posed a greater risk of flight than Mr. Ng because he was found possessing advertisements from a Canadian company that offered its services to create fake identification documents.

[4] Judge Netburn later issued a detention order for Mr. Yin after Mr. Yin was found to have lied about certain information to law enforcement and Pretrial Services.

[5] The facts in Cilins are also readily distinguishable from the current case. There, the defendant, a French citizen, was charged with three counts of witness tampering, one count of obstructing a criminal investigation, and one count of destroying, altering, falsifying records in a federal investigation. Id. at *2. At the detention hearing in this District, Magistrate Judge Frank Mass granted bail with the condition that the defendant be monitored 24 hours a day by an armed security guard. Id. at *1. District Judge William Pauley later issued a detention order after finding, inter alia, that the defendant's "lack of candor" when discussing his assets with Pretrial Services "buttressed this Court's conclusion that nothing short of detention can reasonably assure [the defendant's] appearance at trial." Id. at *3. In contrast, Mr. Ng was completely honest in his interview with Pretrial Services.

Similarly, the government's reliance on United States v. Valerio, 9 F. Supp. 3d 283 (E.D.N.Y. 2014) is also unjustified. In Valerio, the defendant was charged with producing child pornography involving three-year old and six-year old victims. Id. at 285. After an extensive discussion addressing the defendant's danger to the community, Judge Bianco concluded that the defendant's "attempt to replicate a jail in his home is insufficient to adequately address the issues of dangerousness raised by his release." Id. at 296. In addressing the defendant's risk of flight, Judge Bianco noted that the case involved a fifteen-year minimum sentence. Id. at 298. These

## BRAFMAN & ASSOCIATES, P.C.

> It cannot be gainsaid that many kinds of bail conditions favor the
> rich, and, conversely, that there are many defendants who are too
> poor to afford even the most modest of bail bonds or financial
> conditions of release. This is a serious flaw in our system. But it is
> not a reason to deny a constitutional right to someone who, for
> whatever reason, can provide reasonable assurances against flight.

United States v. Dreier, 596 F. Supp. 2d 831, 833 (S.D.N.Y. 2009). Tellingly, this bail condition
has been approved by other federal judges in New York, including Judge Seybert in the David H.
Brooks case (E.D.N.Y. Case # 06 Cr. 550) and most recently by Judge Scanlon a few months ago
in the FIFA bribery case for the defendant Jeffrey Webb (E.D.N.Y. Case # 15 Cr. 252), a non-
United States citizen.

Notably, the government's current position that it is inappropriate for a federal judge to
set bail with the condition of armed security guards is puzzling given that the government
originally agreed to this very condition in the Bernard Madoff case. See United States v.
Madoff, 586 F. Supp. 2d 240, 244 & n.3 (noting that the Government "submitted the jointly
proposed bail condition modifications," which included that the condition that Madoff employ a
security firm, at his wife's expense, to provide 24-hour monitoring of Madoff's building and
video monitoring of his apartment doors). While the government argues that both Madoff and
Dreier were less of a flight risk than Mr. Ng (Richenthal 10/21/15 Letter at 4 n.1), it is worth
noting that both of those defendants were accused of stealing hundreds of millions of dollars and
were facing a Guidelines range of life imprisonment; in contrast, Mr. Ng is accused of paying a
$500,000 bribe.

We also note that Mr. Ng speaks no English. Accordingly, for counsel to confer with Mr.
Ng there must always be a third-party interpreter present who is fluent in Mandarin. In addition,
we have been informed by the government that this case will involve voluminous Discovery and,
based on counsel's preliminary investigation, it is clear that counsel will need to review years of
additional documents and interview dozens of fact witnesses as the charges against Mr. Ng relate
to a fundamentally legal series of overseas projects. To provide effective assistance, counsel
would need to review these documents and interview these witnesses in Mr. Ng's presence and
with the benefit of technological devices.[6] Were Mr. Ng to be permanently detained, it is
inconceivable that counsel could adequately defend this case.

---

concerns are not present in Mr. Ng's case, as there is no legitimate argument that Mr. Ng poses a
threat to the community and there is no mandatory minimum sentence in his case.

[6] Counsel notes that Mr. Ng's residence where he would serve his home detention is located two
city blocks from counsel's office.

## BRAFMAN & ASSOCIATES, P.C.

We urge this Court not to be swayed by the fact that Magistrate Judge Sarah Netburn issued a detention order for Mr. Ng on the original Complaint (that has since been dismissed). It is clear from the September 21, 2015 transcript that the attorney representing Mr. Ng at the hearing had little experience as a criminal lawyer and had no time to investigate the government's factual allegations. Having since investigated these factual allegations, current counsel was able to address the government's flawed arguments and factual distortions presented to Judge Netburn. For example, in the original Complaint filed against Mr. Ng (and since dismissed) the government alleged that Mr. Ng brought $390,000 into the United States on June 13, 2014 to commit bribery. Although Mr. Ng and co-defendant Jeffrey Yin informed customs officials that they had brought the money into the United States to buy paintings and gamble in Atlantic City, the government believed this statement to be false because "[a]t no time [on this trip] were NG and YIN surveilled travelling to Atlantic City." 9/18/2015 Complaint at ¶ 21(e). Despite this sworn allegation in the complaint, the government later acknowledged in a September 29, 2015 letter regarding co-defendant Yin that, in fact, they had recovered receipts from an Atlantic City casino indicating that "'NG, LAT SENG' deposited $300,000 in cash on June 14, 2014, and then withdrew $100,000 in cash on June 16, 2014." Richenthal 9/29/15 Letter at 3 n.1 (attached as Exhibit A). Based on these receipts, the government was forced to admit that "it appears that co-defendant Ng Lap Seng may have used some portion of the $390,000 the defendants brought into the United States on June 13, 2014 . . . to gamble at a casino in Atlantic City." Id. In addition, the government's assumption that the money Mr. Ng brought into the United States was used for bribes is inconsistent with its allegations in the current Complaint that the vast majority of the $500,000 bribes in this case were paid through wire transfers or checks. Unfortunately, without sufficient experience or time to investigate, prior counsel was unable to raise these issues with Judge Netburn.

Mr. Ng has no criminal record, is sixty-seven years old and suffers from a series of medical issues including diabetes and hypertension. Accordingly, he will need a special diet and medical supervision to maintain his health in the many months before trial. Because Mr. Ng is not charged with a violent crime, is not facing a mandatory minimum prison sentence and is otherwise eligible for bail, we urge this Court not to detain him simply because he is wealthy given that any possible flight concerns are completely neutralized by our proposed bail conditions that include electronic monitoring and 24-hour security guards that will always be with Mr. Ng.

We look forward to further addressing these issues at today's 12:30 pm hearing.

Respectfully submitted,

Benjamin Brafman

cc:     AUSA Daniel Richenthal (via email)
        All counsel (via ECF)

5