# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 29, 2015

<u>BY EMAIL</u>

The Honorable Sarah Netburn
United States Magistrate Judge
40 Foley Square
New York, NY 10007

      Re:   *United States* v. *Jeff C. Yin,*
            15 Mag. 3369

Dear Judge Netburn:

      The Government respectfully writes in advance of this afternoon's bail hearing in the above-captioned matter to (a) respond to the defendant's letter of September 25, 2015 ("Def. Ltr."), and (b) provide the Court with additional facts bearing on the Government's request for an order of detention, which came to light over the weekend.

      <u>The Defendant's Letter</u>

      The defendant states that he did not intentionally mislead the Federal Bureau of Investigation ("FBI"), Pretrial Services, and this Court (through counsel), regarding whether he had a passport other than his United States one, despite being asked whether he did multiple times, in different settings, by different individuals. On the contrary, the defendant states, he simply did not "remember[]" that he had a Chinese passport until several days later. (Def. Ltr. 1.) This highly convenient and dubious claim by the defendant conflicts with the facts. The defendant's Chinese passport was found in his bag (the "Defendant's Bag"), along with, among other things, the defendant's wallet; cash; photocopies of both the defendant's United States passport and his Chinese passport; the defendant's Chinese residency documents; vitamins; personal photographs; receipts; keys; toiletries; socks; a shirt; and a laptop. It is apparent that the Defendant's Bag was the defendant's carry-on bag. It defies common sense that the defendant would pack and maintain such a bag with personal items, yet fail to remember that, among those items, was a Chinese passport, particularly when the defendant also had in his bag a photocopy of that very passport (as international travelers often do, in case their passport is lost or stolen).

      The defendant asserts that, notwithstanding these facts, he had no reason to conceal the existence of his Chinese passport, "since he had known since his arrest that the FBI had his bags and all of his belongings." (*Id.*) The facts are to the contrary.

Honorable Sarah Netburn
United States Magistrate Judge
September 29, 2015
Page 2

The defendant was arrested on Saturday, September 19 outside of the Waldorf hotel. He did not have bags with him. Nor did the FBI inform him that any bags belonging to him had been seized, and in fact, none had.

The same day, the FBI brought the defendant's two cellphones, which the defendant had with him when he was arrested, to court, along with the other personal property the defendant had with him when he was arrested. While the defendant was at Pretrial Services, the FBI relinquished physical custody of the defendant's cellphones, which were used to facilitate his United States passport—the only passport he had told the FBI he had—being handed over. In fact, at approximately 2:30 pm, prior to the defendant's presentment, one of the defendant's two cellphones was used to call a certain individual, referred to as Individual-1 in the Complaint, who subsequently arranged for the defendant's United States passport to be provided to defense counsel. The same individual—Individual-1—had custody of the Defendant's Bag, unbeknownst to the FBI at the time. Subsequently, Individual-1 provided the Defendant's Bag to another associate of the defendant for safekeeping.

The following day, Sunday, September 20, the FBI learned of the existence and whereabouts of the Defendant's Bag, and obtained it from this person.

The next morning, Monday, September 21, when the FBI went to the Metropolitan Correctional Center to pick up co-defendant Ng Lap Seng to bring him to Pretrial Services, the defendant saw and called over a certain FBI agent. The defendant asked this FBI agent if the defendant could again have access to a cellphone to make or arrange for additional calls, and asked whether someone had dropped off the defendant's passport. The agent informed the defendant, in sum and in relevant part, that (i) it was not up to the agent whether the defendant could be provided with access to personal property seized in connection with his arrest, such as a cellphone, and (ii) the FBI had recently obtained additional personal property of the defendant, namely, the Defendant's Bag. To the Government's knowledge, this moment—two days after his presentment—was the first time the defendant learned that law enforcement had the Defendant's Bag. It was only after the defendant learned this information that he allegedly "remembered" that he had a Chinese passport.

<u>The Defendant's Access to Resources</u>

In its letter of this past Friday, September 25, the Government informed the Court that the Defendant's Bag contained, among other things, more than $15,000 in U.S. currency, five credit and/or bank cards from China-based institutions with U.S. branches, and a safe deposit box key for a box at a Manhattan branch of a Chinese bank for which the defendant is one of the

Honorable Sarah Netburn
United States Magistrate Judge
September 29, 2015
Page 3

signatories on the account (the "Safe Deposit Box").[1]  In a submission filed later the same day,
defense counsel claimed—based, it appears, entirely on the say-so of the defendant—that the
bulk of these resources do not belong to the defendant.  (Def. Ltr. 1.)

On Saturday morning, September 26, the FBI obtained and executed a search warrant for
the Safe Deposit Box.  The Safe Deposit Box was found to contain more than $430,000 in U.S.
currency, and figurines and pottery, of apparent great value.  The defendant's argument at
presentment regarding his access to resources, and conclusory statement in his letter that, since
his co-defendant's arrest, the defendant "no longer has access" to meaningful resources (Def. Ltr.
1), cannot reasonably be reconciled with the defendant having a key to a safe deposit box, for
which he is one of the signatories, containing nearly half a million dollars in cash.

The defendant's related assertion that any cash to which he had access belonged to the
co-defendant (id.) is, at the very least, in tension with the fact that the defendant, along with co-
defendant Ng Lap Seng, is one of the signatories on the Safe Deposit Box account.  In any event,
this assertion is a red herring.  The pertinent question is whether, contrary to the defendant's
arguments to this Court, the defendant has access to substantial resources with which he may flee
(and seek to re-pay any loss by signers on a bond), not whether the funds he might use formally
belong to him or others.  The answer to that question is yes.

For the foregoing reasons, those discussed with the Court at the September 19, 2015 bail
hearing, and those set forth in the Government's letter of September 25, 2015, the defendant
should be ordered detained.

---

[1]      Since filing its letter, the Government learned that, in the addition to the items discussed
above, the Defendant's Bag also contained (a) photographs of figurines and pottery listed in a
"Private Collection in U.S. for Sale" of "Chinese Antique," certain of which appear visually to
match those found in the Safe Deposit Box; and (b) two receipts, from a casino in Atlantic City,
New Jersey, indicating that "NG, LAT SENG" deposited $300,000 in cash on June 14, 2014, and
then withdrew $100,000 in cash on June 16, 2014.  A search performed late yesterday of the
database referred to in the Complaint that tracks cash transactions at casinos of $10,000 or more
for the name "NG, LAT SENG" yielded reports from June 2014 documenting a deposit of
$300,000, consistent with the first receipt, a withdrawal of $100,000, consistent with the second
receipt, and the "cash in" of an additional $300,000 in chips under the same name.  Accordingly,
it appears that co-defendant Ng Lap Seng may have used some portion of the $390,000 the
defendants brought into the United States on June 13, 2014, as described in paragraph 19 of the
Complaint, to gamble at a casino in Atlantic City.  No other reports for the name "NG, LAT
SENG" were found with respect to casino or other cash transactions during the time period
charged in the Complaint.

Honorable Sarah Netburn
United States Magistrate Judge
September 29, 2015
Page 4

                         Respectfully submitted,

                         PREET BHARARA
                         United States Attorney

            By:    s/ Daniel C. Richenthal
                         Daniel C. Richenthal/Rahul Mukhi/Janis M. Echenberg
                         Assistant United States Attorneys
                         (212) 637-2109/1581/2597


cc:    (by email)

         Sabrina P. Shroff, Esq.