

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 24, 2016

**BY ECF AND ELECTRONIC MAIL**
The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    <u>United States</u> v. <u>Ng Lap Seng</u>,
                15 Cr. 706 (VSB)

Dear Judge Broderick:

        The Government respectfully submits this letter with regard to defendant Ng Lap Seng in the above-captioned case. For the reasons set forth below, the Government believes that one of Mr. Ng's attorneys, Hugh Mo, Esq., faces a potential conflict of interest stemming from his representation in other matters of clients linked to the Government of the People's Republic of China. We believe that Mr. Ng may waive this conflict if he does so knowingly and voluntarily, and accordingly, we respectfully request that the Court conduct a <u>Curcio</u> hearing on this matter.

**A. Background**

        In or about November 2015, the Government informed Mr. Mo that it had learned that Mr. Mo had served as General Counsel to the Permanent Mission of the People's Republic of China to the United Nations (the "PRC UN Mission"), and requested that Mr. Mo provide further details so that the Government could evaluate whether an actual or potential conflict of interest existed.

        Mr. Mo confirmed that he had represented the Government of the People's Republic of China over the years, including representing the PRC UN Mission and the Consulate General of the People's Republic of China in New York (the "PRC NY Consulate"). He stated that from approximately March 1999 to 2005, he served as outside General Counsel to the PRC UN Mission, and in that capacity, his "duties and representation concerned providing advice and representation in the areas of taxation, real estate, liaison with local and federal government agencies, and providing general legal advice." Mr. Mo stated that his services did "not involve any political or policy matters, or any matters involving the United Nations." With respect to his representation of the PRC NY Consulate, Mr. Mo stated that his "most recent engagement . . . involves serving as liaison and providing legal advice regarding public security matters with the NYPD, and do not involve political or policy issues." Mr. Mo stated that he did not believe any

actual or potential conflicts of interest existed, but that Mr. Ng was willing so waive any conflicts that the Government may believe exist.

In January 2016, the Government conferred with Mr. Mo, and the parties agreed that although a Curcio hearing was not necessary at that time, the parties would state on the record their understanding of the applicable facts. The Court held a conference in this case on January 21, 2016. At that time, the Government stated that it had "learned that Mr. Mo has represented and continues to represent in various capacities the government of China, including arms of the government of China that are connected with the United Nations, such as the [PRC UN Mission]." The Government noted that it had raised the matter with Mr. Mo, who had spoken with Mr. Ng about the matter, and that Benjamin Brafman, Esq. – who at that time was also representing Mr. Ng – had also discussed the matter with Mr. Ng. The Government stated, "We don't think this is a full Curcio matter. We just wanted to let the Court know that we had this back-and-forth with defense counsel . . . in case the Court would like to ask . . . any questions." See Transcript of Court Conference (January 21, 2016), United States v. John Ashe, et al., 15 Cr. 706 (VSB) (attached hereto as Exhibit A) at 19-20.

Mr. Mo stated that Mr. Ng "has clearly stated he has no issue with any actual[,] potential[,] or any issue of conflict. If your Honor thinks it's necessary, he could certainly be questioned, and then he'll say that he'll waive any issue of conflict." Id. at 20. The Court stated that it would "take counsel's representation at this stage. Obviously, the case is fluid. So that if something comes up, obviously the government should bring it to my attention." Id. at 21.

Since the January conference, the Government has considered this issue further. The Government now respectfully submits that there is sufficient reason to believe a potential conflict of interest exists to warrant, in an abundance of caution, a Curcio hearing to ensure that Mr. Ng understands his rights and has decided knowingly and voluntarily to continue with Mr. Mo as one of his defense attorneys.

**B. Applicable Law**

A defendant has a right under the Sixth Amendment to conflict-free legal representation. See United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994); United States v. Schwarz, 283 F.3d 76, 90-97 (2d Cir. 2002) (discussing conflicts in context of loyalties owed by individual defendant's counsel to his large institutional client and pecuniary interest in that client's retainer). While the Sixth Amendment encompasses a defendant's right to be represented by the attorney of his choice, the essential aim of the Sixth Amendment's right to counsel is to ensure an effective advocate for all criminal defendants. Wheat v. United States, 486 U.S. 153, 159 (1988). When a district court has been informed of the possibility of a defense counsel's conflict of interest, it has a threshold obligation "to investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." Levy, 25 F.3d at 153; see also United States v. Kliti, 156 F.3d 150, 153 (2d Cir. 1998). As the Second Circuit has held:

> The trial court has an obligation to inquire into the facts and circumstances of an attorney's interests either in response to a timely conflict of interest objection or when it knows or reasonably should know of the possibility of a conflict of interest. Failure to engage in such an inquiry, when it is required, results in an automatic reversal. An inquiry allows the trial judge to determine the precise nature of the conflict and how to proceed, i.e., whether to disqualify counsel, obtain a waiver from the defendant pursuant to Curcio, or take no action.

United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996) (citations and internal quotation marks omitted). See also United States v. Rahman, 189 F.3d 88, 143 (2d Cir. 1999) (discussing the "Court's obligation to inquire concerning a counsel's conflict of interest"); United States v. Kliti, 156 F.3d 150, 153 (discussing "the trial court['s] . . . threshold obligation to determine whether the attorney has an actual conflict, a potential conflict, or no conflict . . . [and] obligation to inquire into the conflict of interest"). If the district court determines that defense counsel has an actual or potential conflict, the court has a "'disqualification/waiver' obligation" to determine whether the conflict is so severe as to obligate the Court to disqualify the attorney or a lesser conflict that can be waived in a Curcio hearing. Kliti, 156 F.3d at 153; Levy, 25 F.3d at 153.

An actual conflict is one that is so "severe" that "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation . . . ." Levy, 25 F.3d at 153 (citing United States v. Fulton, 5 F.3d 605, 612-14 (2d Cir. 1993)). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004) (internal quotation marks and citations omitted). Where a conflict of interest is actual, a court is "obliged" to disqualify the attorney. Levy, 25 F.3d at 153. A potential conflict of interest, by contrast, is a "lesser" conflict. Id. A potential conflict exists where a court finds that "a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation . . . ." Id.

Regardless of the severity of the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat v. United States, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right to the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

If a court determines that there exists a conflict that does not require disqualification, it "must conduct a Curcio hearing to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation." Kliti, 156 F.3d at 153; Levy, 25 F.3d at 153. At a Curcio hearing, the district court should: (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) inquire whether the defendant requires time to digest and contemplate the risks after encouraging him to seek advice from independent counsel, who could be appointed free of charge, if the defendant could not afford to hire an attorney for this purpose. See United States v. Curcio, 680 F.2d 881 (2d Cir. 1982).

### C. Discussion

Since the January 21, 2016 conference, the Government has continued to evaluate whether a potential conflict of interest exists due to Mr. Mo's representation of the PRC UN Mission, among other clients linked to the Government of the People's Republic of China. At this time, we submit that a potential conflict exists, although we believe that the potential conflict can be waived by Mr. Ng.

In an abundance of caution, to ensure that Mr. Ng understands his individual right to conflict-free counsel and the potential conflict of interest created by Mr. Mo's other representations, the Government respectfully requests that the Court conduct a Curcio hearing. The Second Circuit precedents under Curcio direct the trial judge to (1) investigate the "facts and details of the attorney's interests" to determine the nature of the conflict, see United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994); (2) "explain . . . the ramifications of the attorney's conflicts" to the defendant, id. at 158; see also Curcio, 680 F.2d at 889 (requiring advice regarding "the potential perils" of the conflict); (3) afford the defendant "a reasonable time to digest and contemplate the risks posed by joint representation," and to consult with outside counsel, Curcio, 680 F.2d at 889; and (4) determine through questions that are likely to be answered in narrative form whether the defendant "understands the details of his attorney's possible conflict of interest" and voluntarily chooses to run those risks. Id.

Honorable Vernon S. Broderick
June 24, 2016
Page 5

      Because the Curcio inquiry is fact-based, the Government has attached hereto as Exhibit B a proposed Curcio inquiry of Mr. Ng.

      Respectfully submitted,

      PREET BHARARA
      United States Attorney for the
      Southern District of New York

By: _____
      Janis M. Echenberg
      Daniel C. Richenthal
      Douglas S. Zolkind
      Assistant United States Attorneys
      (212) 637-2597 / 2109 / 2418

Enclosures

Cc:    Hugh Hu Mo, Esq., Tai Hyun Park, Esq., and Alexandra A. E. Shapiro, Esq.,
       Counsel for Ng Lap Seng