# EXHIBIT A

GILYASHC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK

2   ------------------------------x

3   UNITED STATES OF AMERICA,

4           v.                15 CR. 706 (VSB)

5   JOHN ASHE, et al.,

6           Defendants.

7   ------------------------------x

8                         New York, N.Y.
                           January 21, 2016

9                         12:15 p.m.

10

11  Before:

12              HON. VERNON S. BRODERICK,

13                           District Judge

14                  APPEARANCES

15  PREET BHARARA
       United States Attorney for the

16       Southern District of New York
    DANIEL RICHENTHAL

17  RAHUL MUKHI
       Assistant United States Attorney

18

19  SILLS CUMMIS & GROSS, P.C.
       Attorneys for Defendant JOHN W. ASHE

20  BY: HERVE GOURAIGE

21  HIRSCHHORN & BIEBER, P.A.
       Attorneys for Defendant FRANCIS LORENZO

22  BY: BRIAN HARRIS BIEBER

23  BRAFMAN & ASSOCIATES, P.C.
       Attorneys for Defendant NG LAP SENG

    BY: BENJAMIN BRAFMAN

24

25

GILYASHC

APPEARANCES (CONT'D)


THE LAW FIRM OF HUGH H. MO, P.C.
        Attorneys for Defendant NG LAP SENG
BY:   HUGH HU MO

FEDERAL DEFENDERS OF NEW YORK, INC. (NYC)
        Attorneys for Defendant JEFF C. YIN
BY:   SABRINA P. SHROFF

ALSO PRESENT:   PATSY ING, INTERPRETER (CANTONESE)

GILYASHC

1              (Case called)

2              THE COURT:  Good afternoon.  You may be seated.

3              Mr. Ng, can you hear the interpreter?

4              MR. MO:  Apparently there's some audibility issue,

5    your Honor.

6              THE COURT:  Let's try and sort that out.  How about

7    now, Mr. Ng?

8              MR. BRAFMAN:  Your Honor, since there's only one

9    defendant who needs an interpreter, perhaps she can sit next to

10   him.

11             THE INTERPRETER:  Your Honor, I just changed the

12   earphones to see if it would cut down on the static.

13             THE COURT:  Okay.

14             MR. BRAFMAN:  If the defendant would be permitted to

15   sit next to the interpreter over there so that it wouldn't

16   interfere with us.

17             THE COURT:  That's fine.

18             MR. MO:  Okay.

19             THE COURT:  Great.  Thank you.  If at any point in

20   time, Mr. Ng, there is a problem with the ear set, just raise

21   your hand, and we'll stop the proceeding, and we'll try and

22   deal with that.

23             All right.  We're here for a pretrial conference.  Let

24   me first hear from the government concerning the status of

25   discovery.

4

GILYASHC

1          MR. RICHENTHAL:  Your Honor, the government has

2    produced to date and, therefore, made available from DupeCoop,

3    which is the principal way we've been doing it as discussed

4    with the Court at the last conference, approximately 3.1

5    terabytes of discovery material.

6          That includes over 1.2 million pages of material and

7    does not include -- that is, the page count does not include --

8    forensic images of electronic devices, of which there are a

9    number, recordings, and other electronic media.  So the volume

10   here is quite large.

11         Still to be processed by LTSC, which is our in-house

12   vendor that makes things available to DupeCoop, is

13   approximately 40.4 gigabytes of data.  So a substantially

14   smaller amount of data.

15         What that consists principally of are materials

16   received in recent days and weeks, including emails received

17   pursuant to search warrants signed by this Court on

18   December 24, 2014, materials that were received by subpoenas

19   and other legal process, and materials we expect to receive but

20   have not yet received, including those from Customs and Border

21   Protection, specifically statements that Mr. Ng and Mr. Yin may

22   have made when bringing in cash into the United States.

23         This was not in the custody of the prosecution team,

24   but we've asked Customs and Border Protection to provide it to

25   us in an abundance of caution, and our understanding is that

GILYASHC

1    they are working to locate, the memorialization, in any, of

2    those statements.  And we will promptly turn that over.

3           We expect that the material yet to produced that I

4    noted, that is, roughly 40 gigabytes or so, will be produced in

5    the coming days or weeks.

6           Specifically within the next four or five days, we

7    expect a substantial set of that material to be available, and

8    we expect the remaining to be available in a couple of weeks.

9           As I think either I or my colleague said last time,

10   this is an ongoing investigation, and we do expect to continue

11   to receive material.  Our process when we do that is twofold:

12   First we give it to  LTSC, typically the same day.

13           MR. MO:  Your Honor, I hate to interrupt.  Mr. Ng

14   apparently is having a problem with his earphone.

15           THE COURT:  Why don't we have Mr. Ng move next to the

16   interpreter.

17           Mr. Richenthal, I understand you're laying out what

18   discovery still needs to be made.  As I understand it, 40

19   gigabytes still need to be made.

20           There are certain statements which may have been made

21   to the Border Protection folks that you've endeavoring to get

22   copies of for Mr. Ing and Mr. Yin.  I have not received those.

23   Do you have a sense of timing with regard to those?

24           MR. RICHENTHAL:  We really don't unfortunately.  It's

25   because they may not in fact have been memorialized.  These are

GILYASHC

1  typically just, as I understand it, brief interviews upon

2  arrival from the United States from a foreign country.  If one

3  declares more than $10,000 in cash or otherwise is subject to

4  what's typically known as secondary inspection, the CBP

5  officers may ask a couple of questions.

6          To the extent they're memorialized, we're endeavoring

7  to get that memorialization and to turn it over.  To the extent

8  there's not, there's nothing to turn over.

9          Our understanding is CBP is diligently working on

10  this.  In fact, they've recently produced a couple

11  memorializations to us in the form of emails.  Those have been

12  provided to LTSC to be given to the defense.

13          We're not going to wait for the full set to turn it

14  over.  In fact, what I was about to say is that our process for

15  material that we receive on an ongoing basis is essentially

16  twofold:

17          First we turn it over virtually immediately to LTSC,

18  literally often the same day, if possible, so it can be

19  produced to the defense.

20          Second, we update an ongoing index.  We've been

21  keeping an index of the nature of the material, the Bates stamp

22  of the material, the date of the material, and whether or not

23  it's designated confidential under this Court's protective

24  order.

25          We provide that index to the defense on an updated

GILYASHC

1   basis fairly frequently, most recently as of yesterday and then

2   again today.  And that provides, among other things, dates that

3   we receive from LTSC as to when that material will be

4   available.

5          So as soon as we have material, we add it to the

6   index, and we send it to the defense so that they know what

7   they're getting, even if we can't actually give them the

8   material just yet, and we'll continue to do that.

9          A couple of things on discovery, but let me pause

10  there in case the Court has questions about what I've said so

11  far.

12          THE COURT:  I don't.  Go ahead.

13          MR. RICHENTHAL:  A couple things.  First we learned of

14  this this morning from Kaplan.  Apparently there may be some

15  sort of error in the Bates numbering.  It's a little unclear,

16  the nature of the error.

17          From what Mr. Kaplan has told us, they can see certain

18  Bates numbers on the screen and not others.  We're going to try

19  to figure that out as quickly as we can.  I don't understand

20  precisely the nature of the error or its cause.

21          I don't think it's an error that's causing the defense

22  not to have material.  I think it's a tracking problem, meaning

23  the numbering simply is not adding up.

24          We'll figure that out as quickly as we can.  I just

25  wanted to note that we conferred with Kaplan prior to this

GILYASHC

1   afternoon's conference, and we'll get it fixed one way or

2   another.

3           THE COURT:  Okay.

4           MR. RICHENTHAL:  Second, with respect to certain

5   emails that were found on devices of Defendant Ashe, I want to

6   be specific with the Court as to what's gun on.

7           We've had extensive conversations with Mr. Gouraige

8   about all this and also with other counsel, and I thought it

9   worth putting on the record.  So let me start with emails.

10          Mr. Gouraige told us that in his judgment emails

11  between his client and a certain attorney may be privileged at

12  certain periods of time.  So what we've done is the following:

13  These emails essentially are in two set so far.

14          Mr. Gouraige has reviewed the first set.  He's

15  produced a privilege log to the government.  We've reviewed the

16  log.  It seemed appropriate.

17          We've released all of the other emails to the defense

18  except a very small number that Mr. Gouraige identified as

19  being purely personal and not relevant which we personally

20  reviewed, and we concurred with that.  That's the first set of

21  emails.  I think it's some 20,000 or so.

22          The second set of emails -- when I speak of "sets,"

23  I'm simply referring to how it's been produced in discovery.

24  Mr. Gouraige undertook the same process.  He's produced a

25  privilege log to us.  We've reviewed it.

GILYASHC

1        Except for one entry, we're in agreement.  We

2 understand we'll be able to resolve that entry soon, and we can

3 release the rest of the emails to the rest of the defense.

4        It's our understanding that Mr. Gouraige would make

5 the privilege log available to co-counsel upon request as well.

6 It is a very small number of emails.

7        We expect to get a third set of emails with respect to

8 Mr. Ashe, and actually other defendants as well, pursuant to

9 the Court's December 24th search warrant.

10        We don't have those yet.  Once we do, we'll hand them

11 over to Mr. Gouraige.  This morning he represented to us there

12 may well be privileged emails in there as well.  So we expect

13 to undertake the same process.

14        We'll do it as quickly as we can.  Mr. Gouraige has

15 been very courteous about doing things promptly and producing

16 things to co-counsel.  We have no reason to believe that won't

17 continue.  That's the emails.

18        The same issues may exist -- we don't know yet -- with

19 respect to certain devices seized from Mr. Ashe's home.  There

20 were a number of electronic devices seized and a number of

21 computers.

22        Mr. Gouraige has identified for us the subset of that

23 larger set that he thinks may contain privileged

24 communications.  It's our understanding he's going to endeavor

25 to undertake the same kind of review, looking for

GILYASHC

1   communications, logging them, and we can have a law assistant,

2   if necessary, concur with that and get the rest of the material

3   to the defense.

4           We have produced the subset of devices that

5   Mr. Gouraige has said does not contain any such material to all

6   defense counsel upon request.  They haven't all requested it,

7   but it is available to them.

8           The other set we've held back at Mr. Gouraige's

9   request.  Our understanding, again, is he will be promptly

10  undertaking that review and, if necessary, with a law assistant

11  U.S. attorney to help, and we'll get that to the rest of the

12  defendants upon request.

13          I just note this for the record.  I don't think

14  there's an issue to be discussed.  I just want make sure

15  everyone understands why those particular emails and particular

16  devices have been treated differently than others in this case.

17          THE COURT:  Let they pause for a second and hear from

18  Mr. Gouraige to confirm that or see if he has anything to add.

19          MR. GOURAIGE:  Nothing to add.  Everything

20  Mr. Richenthal said is correct.

21          THE COURT:  Mr. Richenthal, is there anything

22  additional with regard to discovery?

23          MR. RICHENTHAL:  Nothing that I can think of,

24  your Honor.

25          THE COURT:  Let me ask this:  Where do things stand in

11

GILYASHC

1    terms of -- I think they're sort of linked -- the issue of

2    Mr. Ashe, the current charges against him, and whether the

3    government intends to supersede to add him in any additional

4    charges?

5              MR. RICHENTHAL:  So without commenting in any detail

6    about matters that may be occurring before the grand jury, we

7    will say that we continue to contemplate presenting a proposed

8    superseding indictment.  We expect that it would include one or

9    more counts against Mr. Ashe of bribery and/or money laundering

10   and potentially other charges as well.

11             We've had somewhat productive discussions with

12   Mr. Gouraige about that.  We are not yet prepared to present

13   that for multiple reasons, but we expect we will be prepared to

14   present it soon.  I would anticipate within the next 30 days.

15             THE COURT:  With regard to the issue of the other

16   agency -- I assume the Department of State, but I don't know --

17   the issues relating to any potential immunity with regard to

18   Mr. Ashe, at least as far as the government is concerned -- I'm

19   not saying that there won't be a motion at some point, but that

20   it's been resolved such that you believe you can move forward

21   with additional charges.

22             MR. RICHENTHAL:  We're proceeding very carefully as

23   the Court knows.  As I said on the record on December 10, we do

24   believe that there is not a viable immunity defense to these

25   potential charges, and we expect that they'll likely be

GILYASHC

1   brought.

2          We're obviously conferring with the appropriate parts

3   of the United States government about that.  As I said, in the

4   next 30 days, we'll be in a position to either present those

5   charges for the grand jury's consideration or to decline to do

6   so.

7          THE COURT:  Putting aside for the moment the charges,

8   potential charges, additional charges against Mr. Ashe, do you

9   anticipate a superseder in any event?

10         MR. RICHENTHAL:  I mean, I think in light of the fact

11  that we've now had two guilty pleas in this case, one of which

12  was by a defendant in the current indictment, and given the

13  nature of the ongoing investigation, I would anticipate a

14  superseder in any event.

15         I don't think at present, other than with respect to

16  Mr. Ashe, it will materially change kind of the mix of

17  information in the case.

18         In any event, as I think we told the Court last time,

19  we have not held back any discovery with respect to any

20  defendant on the ground that they're not yet charged or might

21  not be charged with a given offense.

22         We've turned over everything that we have that we

23  believe falls within Rule 16 or is otherwise discoverable,

24  taking a very broad view.  The short answer is we do expect a

25  superseder.  The longer answer is I don't think it will

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   materially change things with other defendants.

2          With that said, obviously the defendants would have a

3   right to direct motions to the face of a superseder.  Of

4   course, they reserve that right, and they can't obviously make

5   those motions until they see it.

6          THE COURT:  Until it gets filed, yes.

7          Let me hear from the defense:  Is there any issue with

8   regard to the government's statement with regard to discovery,

9   anything that you want to bring up?  Then I'd like to talk

10  about motions.

11         MR. BIEBER:  On behalf of Mr. Lorenzo, Judge, I don't

12  have any issue with anything Mr. Richenthal said about the

13  discovery process.

14         I would just note for the Court's edification, Bates

15  numbers a series of 0s and then 1 all the way through 292023

16  are my client's emails, just to give you the understanding of

17  what we're looking at and to give you a little bit more

18  information, we retained the E discovery company Relativity.

19         All of the information that is loadable, of the

20  million-plus documents, has finally been loaded.  It's in a

21  searchable format.  My associate is going to assist me in going

22  through the discovery.

23         I don't know if I'm talking out of turn talking about

24  the next status conference, which I discussed it with all

25  codefendants' counsel.  I discussed it with counsel for the

GILYASHC

1   government.

2         We were thinking out loud two months to come back to

3   you and say, okay.  So do you remember what we said in January

4   about loading and all this information?  Here is where we're

5   at.

6         Either we're comfortable asking you to approve this

7   proposed motion schedule or, Judge, I'm sorry.  We need a

8   little bit more time because we're going through the documents.

9   That's our thinking on the discovery.

10        THE COURT:  Let me hear if any of the defense counsel

11  have any other views with regard to this.

12        Mr. Brafman.

13        MR. BRAFMAN:  Just so the record reflects the

14  letters --

15        THE COURT:  I was going to mention that.

16        MR. BRAFMAN:  When we had our last status conference,

17  Defendant Ng asked for a speedy trial.  There was some colloquy

18  which suggested that if we were to write on that, it might be

19  viewed as a motion for severance because there were other

20  codefendants.

21        Upon reflection and after doing some research and

22  talking to some of my colleagues, we withdrew our request for a

23  speedy trial by writing, copied to the government, filed on

24  ECF.

25        We are not pressing the issue today.  What we are

GILYASHC

1    trying to do is trying not to go through a variety of sets of

2    motions as the indictment changes.  Hearing that there's going

3    to be a new indictment perhaps within 30 days, I think

4    Mr. Bieber's request that we not set a motion schedule today

5    makes sense because we don't know what motions we're going to

6    be filing until we actually see the charges, if any, that are

7    going to be changed or added or whether there are defendants

8    who are going to be added.

9              So, given the volume of materials, we would like

10   eventually to make the severance motion that I'm thinking about

11   filing when I have as much information as I can get so that I

12   don't have to go through a series of motions.  I don't want the

13   first motion to be denied, not because it's substantively

14   inappropriate but because it's premature based on what we hear.

15             I must say that this is not, in my view, the most

16   complicated case that's been tried in this building, although

17   it may set the record for the number of volume of materials

18   that we hear are coming.

19             At some point, we would hope that the Court would

20   allow the government to stand up and say, this is the

21   indictment that we expect to proceed to trial on and that if

22   in fact we uncover any additional materials, that's for a

23   second indictment or gets subsumed as a prior bad act because

24   at some point we do need to actually set a motion schedule and

25   a projected trial date.

GILYASHC

1                 THE COURT:  I'll say this:  I'll do it sort of one

2       step further.  At some point I will say, this is the indictment

3       we're going to trial on.  Obviously, if the government then

4       supersedes, it's going to be an issue, or they would have to

5       file another indictment.

6                 Right now it sounds -- at least there's an

7       agreement -- there is still more material to be produced.  The

8       defense is still reviewing the materials so that they can

9       determine exactly what motions they're going to make.

10                The government, hopefully within the next 30 days or

11      so, will either file a superseding indictment or not so that

12      the defense will know sort of what the indictment is they

13      should file motions against.

14                I'll hear -- I have no objection to adjourning the

15      matter, and we'll talk about a date in a moment.  But I do

16      expect, when we do come back, to hear if there is a superseder,

17      whether or not something else is imminent, in other words, down

18      the road, so that we can move because I'd like to set a

19      schedule.

20                Again, after hearing from counsel with regard to your

21      having reviewed the materials -- and I agree with you.  We

22      should avoid, to the extent possible, having a series of

23      motions.  We should have one set of motions, to the extent we

24      can, and then proceed from there.

25                So let me hear and see -- Mr. Brafman, were you done?

1          MR. BRAFMAN:  Yes, sir.

2          THE COURT:  Ms. Shroff?

3          MS. SHROFF:  Your Honor, it's my policy not to have

4    motion schedule until discovery is complete.  When discovery is

5    complete, we can have a motion schedule.

6          THE COURT:  In this case it may be larger because

7    there may be dribs and drabs that come in, but certainly things

8    like statements, things like emails, things like search warrant

9    results and applications -- those are things where motions may

10   be made that should be produced.

11          So let's talk about the next conference.  I understand

12   the request for several months.  I think I'm going to give you

13   a little bit more time, until around the first week of April or

14   so.

15          MR. BIEBER:  Judge, if we can just have a moment.

16          THE COURT:  Absolutely.  Just to give you a sense, the

17   choice was either April 1 or April 8.  I hesitate to say

18   April 1 because I'm sure there are some shenanigans that would

19   go on here.  So I would prefer April 8.

20          MR. BIEBER:  April 8 is fine by the defense, Judge.

21          THE COURT:  So we've decided on the next date we're

22   going to come back.

23          MR. RICHENTHAL:  What time?

24          THE COURT:  April 8 at noon.  As I understand it,

25   there is one motion, as I understand it, that probably will be

GILYASHC

1   filed, although it doesn't involve defense counsel.  That's the

2   motion on February 22, which I think we're still on schedule

3   for.

4              MR. RICHENTHAL:  That's correct, your Honor.

5              THE COURT:  We'll come back April 8 at noon.

6         Let me ask:  Is there anything else we need to deal

7   with with everyone with the case?

8              MR. RICHENTHAL:  Yes, your Honor.  In light of the

9   state of discovery, the nature of the case, and defense counsel

10  contemplating potential motions, I would request that time be

11  excluded between today and April 8.

12             THE COURT:  I think that's appropriate.  Again, I take

13  Mr. Brafman at his word.  Probably the charges -- you're

14  right -- aren't particularly complex.  However, A, the

15  discovery in the case clearly has a complexity that all of the

16  counsel are dealing with.

17        I think, in order to allow counsel to review the

18  discovery, allow the government to make a decision concerning a

19  superseder, and allow counsel to decide what motions they may

20  want to file, I think the exclusion of time between now and

21  April 8 is in the interests of justice and outweighs the

22  interests of the public and the defendants in a speedy trial.

23             MR. RICHENTHAL:  Nothing else on our side, your Honor,

24  with respect to all defendants.  Putting aside Defendant

25  Lorenzo's motion for a second, we do want to raise an issue --

GILYASHC

1    we don't think it's a material one -- with respect to Mr. Ng.

2         I don't think the rest of the counsel have to remain,

3    although obviously they're free to if they'd like, but nothing

4    else on our end with respect to the rest of the defendants.

5         THE COURT:  How long do you think it will take?

6         MR. RICHENTHAL:  I think it's very brief.

7         THE COURT:  Have you raised it with your adversary?

8         MR. RICHENTHAL:  We have, yes.  We just wanted to note

9    that the government learned that Mr. Mo has represented and

10   continues to represent in various capacities the government of

11   China, including arms of the government of China that are

12   connected with the United Nations, such as the People's

13   Republic of China Mission to the United Nations.

14        We advised Mr. Mo that we had learned this.  We asked

15   him whether he had conferred with Mr. Ng as to whether this

16   might potentially present a conflict.

17        He advised us in response he had talked with Mr. Ng

18   about this.  He had talked to Mr. Brafman about this, who had

19   also spoken to Mr. Ng, and Mr. Ng was comfortable proceeding

20   and did not believe there would be any conflict and, to the

21   extent there was one, was willing to say he was comfortable on

22   the record.

23        We don't think this is a full Curcio matter.  We just

24   wanted to let the Court know that we had this back-and-forth

25   with defense counsel, Mr. Mo and Mr. Brafman.  We're

GILYASHC

1   comfortable in proceeding.   Our understanding is that Mr. Ng

2   was as well.   I

3        just wanted to put that on the record and have him say

4   that in case the Court would like to ask him or any counsel any

5   questions.

6        THE COURT:  Let me hear from counsel for Mr. Ng.

7        MR. MO:  Yes, your Honor.   This exchange of

8   communications took place in November of last year regarding

9   potential or actual conflict.

10       My understanding is the government at this point do

11  not believe there is a Curcio hearing required.   Regarding the

12  issues of Mr. Ng being comfortable having me be part of his

13  defense team, my position is he has clearly stated he has no

14  issue with any actual potential or any issue of conflict.

15       If your Honor thinks it's necessary, he could

16  certainly be questioned, and then he'll say that he'll waive

17  any issue of conflict.

18       THE COURT:  Go ahead, Mr. Brafman.

19       MR. BRAFMAN:  Your Honor, I might add that normally if

20  you do a full Curcio hearing, we are provided with the

21  questions in advance, which I think it would be very difficult

22  to do.  I don't think it's necessary.

23       We've discussed it extensively through Mr. Mo with

24  Mr. Ng.  I don't believe there's a conflict.  If a witness came

25  in, the fact that he has two lawyers present -- I've never

GILYASHC

1    represented anybody in these areas so that he could always have

2    me do the questioning if it came to it.  So I don't think there

3    is a need, other than a simple question to Mr. Ng.

4           I also state for the record, to the extent that it's a

5    factor, that if Mr. Mo gets qualified, I will nominate myself.

6           THE COURT:  We won't hold you to that though,

7    Mr. Brafman.

8           I think I will take counsel's representation at this

9    stage.  Obviously, the case is fluid.  So that if something

10   comes up, obviously the government should bring it to my

11   attention.

12          It may be that, as Mr. Brafman indicated, that it may

13   be that it would just be a matter where Mr. Brafman could do

14   the examination, if we get to any stages and any motions or at

15   a trial.

16          But I take the representation that, at least at this

17   stage, all counsel believe there doesn't appear to be a

18   conflict.  I'll take your representation.

19          If that changes -- I would ask counsel to be cognizant

20   of this issue going forward when you're reviewing documents and

21   the like and also when any information comes to the

22   government's attention concerning potential witnesses so that

23   we can deal with it and have a Curcio, if necessary, as soon as

24   possible, if that's where it ends up.  I'll take counsel's

25   representation at this stage.  I don't think there's a need to

GILYASHC

1   have a Curcio at this stage about the issue.

2        I think it's on the record that the parties are in

3   agreement, and counsel has indicated that he's communicated

4   with Mr. Ng and that Mr. Ng doesn't, A, believe there's a

5   conflict.  To the extent there is some sort of a conflict at

6   this stage -- I'm only saying through today's date -- that he

7   would be amenable to waiving that conflict.

8        Again, that's without a Curcio.  Things may come up at

9   a later time.  I don't believe there's anything that indicates

10  that a Curcio is necessary from what the government has said.

11       MR. RICHENTHAL:  Nothing further from the government,

12  your Honor.

13       THE COURT:  Anything from the defense?

14       MR. BIEBER:  No, Judge.

15       THE COURT:  We'll stand adjourned as far as the whole

16  case is concerned.  Then we'll move to oral argument on

17  Mr. Lorenzo's motion.

18       MR. BRAFMAN:  Thank you, your Honor.

19       (Adjourned)

20

21

22

23

24

25