

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 28, 2016

**BY ECF (WITH REDACTIONS) AND ELECTRONIC MAIL**

The Honorable Vernon S. Broderick
United States District Judge
Thurgood Marshall United States Courthouse, Room 415
40 Foley Square
New York, NY 10007

> Re:     *United States* v. *Ng Lap Seng and Jeff C. Yin*,
>           S4 15 Cr. 706 (VSB)

Dear Judge Broderick:

As requested by the Court, the Government respectfully submits proposed redactions to the post-arrest interviews of defendants Ng Lap Seng and Jeff C. Yin in the above-captioned matter. With respect to Ng, the Government has identified its proposed redactions on the draft transcript of Ng's interview previously prepared by Ng's counsel.  The Government is filing publicly a redacted version of this transcript, and is separately submitting to the Court a version that has the proposed redactions marked, but not finalized, which version the Government requests be filed under seal, pending further order of this Court.  With respect to Yin, the Government does not presently have a transcript of the interview, but is in the process of creating one.  Accordingly, the Government has identified its proposed redactions in the form of a chart specifying the words or phrases proposed to be redacted, and the approximate times where those words or phrases may be found in the video of the interview, which chart the Government also requests be filed under seal, pending further order of this Court.

The Government also writes to set forth its bases for the proposed redactions.  Because this letter describes certain of those proposed redactions and makes related arguments, the Government is filing a redacted version of this letter publicly, and requests that the unredacted version be filed under seal, pending further order of this Court.

As set forth below, in determining the extent of appropriate redactions to the post-arrest interviews, the Court should consider the privacy interests of third-parties identified in those interviews, law enforcement interests, and the First Amendment and common law rights of public access to court proceedings and filings.  The Government respectfully submits that its proposed redactions adequately protect the privacy rights of third-parties and law enforcement interests while also preserving the public's right to access court proceedings and monitor the judicial process.  *See Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006).

Honorable Vernon S. Broderick
September 28, 2016
Page 2

I.      <u>Background</u>

In late October 2015, soon after the defendants were indicted, the Government provided to each defendant a video of his post-arrest interview by the Federal Bureau of Investigation. On November 12, 2015, with the consent of the defendants, the Court entered a protective order, which provided that certain material produced in discovery, including "materials mentioning potential subjects or targets of investigation," was "Restricted Information," and set forth a procedure to be followed if a party disputed any such designation. (Docket Entry No. 86.) Pursuant to this order, the Government designated both post-arrest interviews as "Restricted Information."

On Thursday, August 11, 2016, Ng filed a motion to compel. As Exhibit E to a declaration in support of his motion, Ng filed a draft transcript, prepared by his counsel, of the video of his post-arrest interview. (Docket Entry No. 248.)[1]

On Saturday, August 13, 2016, without objection from Ng, the Government requested the Court to remove the exhibit from the public docket given the interview's designation as Restricted Information, which the Court promptly did.

Ng subsequently advised the Court, both in writing and at a conference held on September 12, 2016, that he objected to the designation of the video as restricted, and in any event objected to redaction of the draft transcript. At the same conference, Yin advised the Court that he took the same position with respect to the video of his post-arrest interview.

On September 19, 2016, Ng filed a reply in further support of his motion to compel. As Exhibit B to a declaration in support of his reply, Ng filed, under seal, a revised and expanded draft transcript of the video of his post-arrest interview, which included several transcribed minutes of conversation before the interview began.[2] Ng also filed, under seal, the video itself.

On September 23, 2016, Ng filed a motion to suppress his post-arrest statements. As Exhibit A to a declaration in support of his motion, he filed, under seal, the same expanded draft transcript that he had filed in connection with his reply in further support of his motion to compel.

---

[1]   As stated in footnote two of that transcript, with respect to statements of Ng, the transcript only includes statements in English made by the interpreter who was interpreting Ng's statements. It does not translate Ng's statements directly. The Government has learned that, as a result, the transcript does not include several statements made by Ng, including in a conversation with a Chinese-speaking agent. The Government intends to prepare a complete transcript.

[2]   This revised transcript, like the one filed by Ng on August 11, 2016, only includes statements in English made by the interpreter who was interpreting Ng's statements.

Honorable Vernon S. Broderick
September 28, 2016
Page 3

On September 26, 2016, Yin filed a motion, under seal, to suppress his post-arrest statements. (*See* Docket Entry No. 297.)[3]  Yin also filed, under seal, the video of his interview.

II.     Applicable Law

The Supreme Court has held that "the press and general public have a constitutional right of access to criminal trials." *Globe Newspaper Co.* v. *Superior Court*, 457 U.S. 596, 603 (1982) (citing *Richmond Newspapers, Inc.* v. *Virginia*, 448 U.S. 555 (1980)).  The "right of access is embodied in the First Amendment," and stems in part from the fact that "the criminal trial historically has been open to the press and general public." *Id.* at 603-04.  The Supreme Court has further explained the principles underlying the constitutional right of access:

> [T]he right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole.  Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole.  Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process.  And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process-an essential component in our structure of self-government.

*Id.* at 606.

Following *Globe Newspaper*, the Supreme Court and the Second Circuit have held that the First Amendment right of access applies not only to criminal trials themselves, but to other aspects of criminal proceedings, including preliminary hearings, *see In Press–Enterprise Co.* v. *Superior Court of Calif.*, 478 U.S. 1 (1986); pretrial suppression hearings, *see In re Herald Co.*, 734 F.2d 93, 98 (2d Cir. 1984); *voir dire* proceedings, *see ABC, Inc.* v. *Stewart*, 360 F.3d 90, 105-06 (2d Cir. 2004); plea hearings, *see United States* v. *Haller*, 837 F.2d 84, 86 (2d Cir. 1988); and sentencing hearings, *see United States* v. *Alcantara*, 396 F.3d 189, 191-92 (2d Cir. 2005).

As is relevant here, the Second Circuit also has held that the First Amendment right of access applies to "written documents submitted in connection with judicial proceedings that themselves implicate the right of access," *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987), and to "briefs and memoranda" filed in connection with pre-trial and post-trial motions, *see United States* v. *Gerena*, 869 F.2d 82, 85 (2d Cir. 1989).  The public also has a common law right of access to such documents.  *See Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

---

[3]   Yin's motion, memorandum of law in support, declaration in support, and affidavit in support do not refer to those limited portions of the interview that the Government believes it appropriate to redact.  The Government accordingly does not object to public filing of Yin's motion papers, while the video itself remains under seal, pending further order of this Court.

Honorable Vernon S. Broderick
September 28, 2016
Page 4

This does not mean, however, that any document filed by a party must be made publicly available, in whole or in part. As the Second Circuit has explained, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Lugosch*, 435 F.3d at 119 (internal quotation marks omitted). The question is not whether a document has been filed, but rather, what is the nature of the document and purpose for which it was filed, specifically, whether it is a "judicial document," that is, one "relevant to the performance of the judicial function and useful in the judicial process." *Id.* at 126 (internal quotation marks omitted).

Accordingly, a court asked to determine whether a document filed under seal should be unsealed needs to engage in a two-step inquiry. First, the court must determine whether the document, in whole or in part, is a "judicial document."[4] If the answer is yes, then the court must either order the document unsealed or make "specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Id.* If such values are present, a court should consider whether redaction is "a viable remedy," or whether the document presents "an all or nothing matter." *United States* v. *Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

III.   Discussion

The Government respectfully submits that under the standards set forth in case law, the post-arrest interviews of the defendants should be partially redacted in order to protect the rights of third-parties, including potential witnesses or subjects, and to protect law enforcement interests, while preserving the public's First Amendment and common law rights of access.

All of the Government's proposed redactions are to names or phrases identifying third-parties not charged in this case or in the related case of *United States* v. *Julia Vivi Wang*, 16 Cr. 495 (GBD). The Government's proposed redactions fall within two categories: (1) names and phrases identifying such individuals, who ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; and (2) names and phrases identifying ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ who ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[5] The Government discusses these categories in order.

---

[4]   Because a judicial document may implicate the common law right of access, but not the First Amendment right of access, and the analysis for whether sealing is warranted in the context of the latter is more stringent, in the appropriate case, a court may need to determine which right of access is at issue. *See, e.g.*, *United States* v. *Erie Cty. N.Y.*, 763 F.3d 235, 238-41 (2d Cir. 2014). This letter assumes that the materials at issue, to the extent they are judicial documents, implicate both rights of access.

[5]   The second draft transcript prepared by Ng's counsel, and thereafter filed under seal, includes a short telephonic conversation between an agent and an Assistant United States Attorney ("AUSA") that was not part of Ng's interview, and was inadvertently captured by the recording. In that conversation, the agent suggested that the AUSA, who was inquiring as to the status of the interviews, contact another agent. The Government proposes to redact that second agent's name, which is irrelevant to the defendants' motions.

Honorable Vernon S. Broderick
September 28, 2016
Page 5

      A.      Uncharged Third-Parties Who ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

           1)  *The Portions of the Interviews that Identify Such Uncharged Third-Parties Are Not Judicial Documents*

The portions of the interviews that refer to uncharged third-parties in the first category do not constitute judicial documents. Neither Ng's motion to compel nor his motion to suppress rests on the identification of such uncharged individuals, nor does it name or describe such individuals. Nor does Yin's motion to suppress rest on the identification of any such individuals or name or describe such individuals. The identity of these individuals accordingly would not assist the public "to assess the correctness of the [Court's forthcoming] decision[s]" on the defendants' motions. *Lugosch*, 435 F.3d at 123. Nor is the identity of such third-parties otherwise necessary for "public monitoring of federal courts." *Id.* (internal quotation marks omitted). The public's right of access is not triggered by the mere fact that the defendants, for their own reasons, have chosen to contest the redaction of references to uncharged third-parties that have no bearing on their motions.

Nor is the public's right of access triggered by the fact that the videos were provided in discovery, without redaction, prior to the entry of the protective order in this case. *See Seattle Times Co.* v. *Rhinehart*, 467 U.S. 20, 33 (1984) ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); *United States* v. *Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption[] [of access's] reach.").

Moreover, as the Third Circuit recently explained—in rejecting a request for a letter sent in discovery, containing the names of co-conspirators, to be made public—a rule that materials or information provided in discovery must be made public "would be much to the detriment of future defendants, who would probably receive less information in discovery than they currently do and would require judicial resolution of more discovery disputes." *North Jersey Media Group Inc.* v. *United States*, --- F.3d ----, 2016 WL 4651386, at *9 (3d Cir. Sept. 7, 2016); *see also id.* ("were we to apply a right of access in this case, it could stunt future efforts by prosecutors to resolve pretrial discovery disputes and motions practice without having to involve the district courts"). This concern is not hypothetical. Here, if the Government had known that the defendants would seek to file publicly interviews (and/or transcripts thereof) that identified uncharged third-parties, including potential witnesses and individuals having nothing to do with the charged conduct, the Government would not have provided those interviews to the defendants without first redacting them or seeking a Court order restricting their filing or other dissemination. Third-parties should not be made worse off by the Government's decision to provide unredacted videos to the defendants without first taking these steps, which the Government did not expect would prove necessary.

Nor, finally, is the public's right of access triggered by the fact that the interviews contain

Honorable Vernon S. Broderick
September 28, 2016
Page 6

██████████████████████████████████████████████████

██████████████████████████; and in any event, the identity of ███████████ does not bear in any way on the defendants' motions.  No fair conclusion about ███████████ can be drawn from the mere fact that agents inquired about ████ and/or that the defendants mentioned ██████ during an interview.

> 2)  *Even if the Interviews in Their Entirety Are Considered To Be Judicial Documents, the Proposed Redactions Are Appropriate*

For the reasons set forth above, nothing in the first category renders pertinent portions of the post-arrest interviews judicial documents, and the Court should accordingly so-order the Government's proposed redactions within this category.  But even assuming *arguendo* that the post-arrest interviews, in their entirety, are judicial documents, the Court should nevertheless so-order the Government's proposed redactions within this category.

The Second Circuit has held that "[t]he privacy interests of innocent third parties should weigh heavily in a court's balancing equation."  *Amodeo*, 71 F.3d at 1051 (internal quotation marks and ellipsis omitted; bracket in original).  "Courts have long declined to allow public access simply to cater 'to a morbid craving for that which is sensational and impure.'"  *In re Caswell*, 18 R.I. 835, 836, 29 A. 259, 259 (1893).  The Second Circuit has also explained:

> In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public. Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public. . . .
>
> The nature and degree of injury must also be weighed. This will entail consideration not only of the sensitivity of the information and the subject but also of how the person seeking access intends to use the information. . . . The court should consider the reliability of the information.  Raw, unverified information should not be as readily disclosed as matters that are verified.  Similarly, a court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein.

*Amodeo*, 71 F.3d at 1051.

Here, as discussed above, none of the defendants' motions rests, in any way, on the identification of uncharged third-parties within the first category.  The public's right to those portions of the post-arrest interviews identifying such third-parties, if the public has such a right, is accordingly at its nadir.  *See id.* at 1052 (the "presumption [of public access] is weak" where a

Honorable Vernon S. Broderick
September 28, 2016
Page 7

document "bears only a marginal relationship to the performance of Article III functions").  At
the same time, the privacy interest of these third-parties is significant.  Questions asked by law
enforcement in a post-arrest interview, and answers given in such interviews, are quintessential
"[r]aw, unverified information."  *Id.* at 1051.  But their public disclosure, particularly in a case in
which the Government has stated that the investigation is ongoing, can nevertheless have
meaningful detrimental effects, and those identified do not have "a fair opportunity . . . to
respond" to any real or perceived accusations.  *Id.*

Law enforcement interests also strongly militate in favor of redaction of uncharged third-
parties within the first category.  As the Government has previously indicated, its investigation is
ongoing.  Law enforcement                                                                ,
                                                          .  Nor has the Government
determined which witnesses it will call at trial.  As the Second Circuit has recognized:

> Unlimited access, while perhaps aiding the professional and public
> monitoring of courts, might adversely affect law enforcement
> interests or judicial performance.  Officials with law enforcement
> responsibilities may be heavily reliant upon the voluntary
> cooperation of persons who may want or need confidentiality.  If
> that confidentiality cannot be assured, cooperation will not be
> forthcoming.  Although courts have compulsory process available
> to compel the giving of evidence or the production of documents,
> cooperation is also often essential to judicial efficiency.  If release
> is likely to cause persons in the particular or future cases to resist
> involvement where cooperation is desirable, that effect should be
> weighed against the presumption of access.

*Amodeo*, 71 F.3d at 1050.

Premature release of the entirety of the post-arrest interviews might chill the willingness
of potential witnesses or subjects to cooperate voluntarily with law enforcement in the ongoing
investigation, or might cause such individuals to seek to tailor what they say to what they believe
law enforcement already knows, thereby impeding the investigation.  Even if neither of these
things were to occur, premature release of the entirety of the post-arrest interviews, particularly
given the press attention to this case, might lead the defendants to seek to cross-examine certain
witnesses at trial as to whether their testimony is colored by what the defendants said or did not
say about them.  The defendants should not be permitted to gain a potential strategic advantage
by choosing not to redact the identities of uncharged third-parties.

In sum, to the extent that the Court engages in a balancing of factors (although it need not
do so, because the interviews are not judicial documents with respect to the first category), it
should find that the limited redactions proposed by the Government are appropriate.

3) *Ng's Improper Public Filing of a Transcript Does Not Alter the Foregoing Analysis*

In its order of September 14, 2016, the Court asked ask the parties to address how the holding of *Gambale* v. *Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004), impacts the Court's consideration of the Government's request for redaction.[6] The Government does not believe that *Gambale* precludes the Court from ordering the redactions proposed by the Government, even if those redactions may include portions of a transcript that was previously public.[7]

In *Gambale*, confidential information (a settlement amount) was both discussed in a public proceeding, a transcript of which was made and filed in the ordinary course, and provided in a public court order, which was also filed in the ordinary course, and thereafter "reside[d] on the highly accessible databases of Westlaw and Lexis," in addition to being "disseminated prominently elsewhere." 377 F.3d at 144. On appeal, the Second Circuit explained: "We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again." *Id.*

Here, by comparison, the third-parties whose identity the Government seeks to protect in the first category ████████████████████████████████, and a draft transcript was made public improperly by one party, and only briefly, before being placed under seal, as it should have been in the first instance. In such circumstances, the Court retains power to order that redactions be made to the revised and expanded draft transcript, before it is unsealed, and it should exercise that power, in light of the limited time when the prior transcript was public, because declining to do so would reward the improper conduct (whether intentional or inadvertent) of a party in making public that which was not public, and given the privacy and law enforcement concerns discussed above.

---

[6]   Other than an approximately seven second clip submitted to Magistrate Court by the Government in connection with seeking the detention of Yin, none of Yin's post-arrest interview has been filed or discussed publicly, and the Government's proposed redactions do not include any portion of those seven seconds or any portion concerning those seven seconds, in which Yin stated, incorrectly, that he only had a United States passport, a matter having nothing to do with uncharged third-parties mentioned elsewhere in the interview. The Government accordingly does not believe that *Gambale* is implicated with respect to Yin's post-arrest interview.

[7]   As discussed above, the revised and expanded draft transcript prepared by Ng's counsel, which was filed under seal, includes several minutes before the interview began, which the initial transcript, improperly filed publicly, did not include.

Honorable Vernon S. Broderick
September 28, 2016
Page 9

The Government does not read *Gambale* as precluding such an order. On the contrary, subsequent to *Gambale*, the Second Circuit held, in *Pullman* v. *Alpha Media Pub., Inc.*, 624 F. App'x. 774 (2d Cir. 2015), that a district court properly ordered a transcript containing a settlement amount redacted, notwithstanding that, prior to the order, the transcript had been posted on an online message forum by a third-party. The Second Circuit explained:

> The district court also did not abuse its discretion in redacting the settlement amount, as referenced in the transcript of the September 2013 settlement conference. As part of her argument for the unsealing of the settlement amount, Pullman contends that the amount is already in the public domain. She points to *Gambale v. Deutsche Bank AG*, where we held that after a confidential settlement amount was made public, it could no longer be made private again. 377 F.3d 133, 144 (2d Cir. 2004). In *Gambale*, though, the defendants appealed from the district court's un-sealing of previously sealed documents that contained settlement terms. It was the district court that publicly disclosed the magnitude of the settlement, referring to it in its unsealing order. That unsealing order was accessible on Westlaw and Lexis, and was "disseminated prominently" in a New York Times article—this Court had no means "to put the genie back [in the bottle]." *Id.* Here, Pullman appeals from the district court's sealing—rather than un-sealing—order, which redacted the settlement amount soon after the September 2013 transcript became available. It was a third party who posted the unredacted transcript, and it was a limited disclosure on an online message forum rather than a court order available on "highly accessible databases," *id.*, and in the national media.

*Id.* at 779.

The facts here are closer to those of *Pullman* than those of *Gambale*, and the potential harm to third-parties and the public interest is greater here than in either of those cases, neither of which were criminal cases.

B.      ▮▮▮▮▮▮▮▮▮▮

The second category of redactions proposed by the Government—to ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮—presents a closer call, although considering all of the facts and circumstances, the Government submits ▮▮▮▮▮▮▮ should also be redacted. In the alternative, the Government proposes that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

As the Court is aware, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Honorable Vernon S. Broderick
September 28, 2016
Page 10

[redacted]
[redacted]8

However, the Government submits that the better view is that those portions of [redacted] interview in which [redacted] is not a judicial document, because, [redacted]

[redacted]

[redacted]

In any event, even if [redacted] post-arrest interview is a judicial document, to the extent that it contains [redacted], the Government believes that respect for the privacy of [redacted] militates in favor of redaction, for the reasons described above with respect to others.

Finally, for the same reasons described above, the Government does not believe that the fact that a prior version of the transcript of Ng's post-arrest interview was improperly and briefly filed publicly precludes this Court from ordering redaction. While the Government understands that [redacted] the Government does not believe that this fact, without more, precludes the Court from ordering redactions to the transcript, given the limited period in which it was public, the importance of not creating an incentive for parties to file documents publicly that should not be filed publicly, and that the transcript contains [redacted] and accordingly implicates privacy interests of [redacted].

In the alternative, should the Court be inclined to order that one or both of the interviews be publicly filed without redacting [redacted], the Government believes it would be appropriate for [redacted]

[redacted]

---

8    Based on its review of the draft transcript, the Government understands that [redacted] in his interview, as indicated in the unredacted draft transcript previously provided to the Court by Ng.  Based on its review of the video, the Government understands that [redacted] in his interview, as indicated on the chart enclosed with this letter.

Honorable Vernon S. Broderick
September 28, 2016
Page 11

Respectfully submitted,

PREET BHARARA
United States Attorney

By:     s/ Daniel C. Richenthal
        Daniel C. Richenthal
        Janis M. Echenberg
        Douglas S. Zolkind
        Assistant United States Attorneys
        (212) 637-2109/2597/2418

Enclosures

cc:     (by ECF (with redactions) and Electronic Mail)

        Counsel to Ng Lap Seng

        Counsel to Jeff C. Yin