Shapiro Arato LLP

500 Fifth Avenue, 40th Floor
New York, NY 10110
tel: 212-257-4880
fax: 212-202-6417

www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

July 23, 2017

**BY ECF**

The Hon. Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, NY 10007

      Re:    *United States v. Ng Lap Seng*, 1:15-cr-00706-VSB

Dear Judge Broderick:

      Defendant Ng Lap Seng respectfully submits this letter in response to the government's proposed instructions concerning its "illegal gratuity" theory under § 666. (*See ,e.g.*, Dkt. 472 at 32-33). The Court should not include the concept of gratuities in its instructions, as § 666 does not prohibit gratuities, and the evidence at trial does not support the theory that Mr. Ng paid gratuities to Ashe or Lorenzo (as opposed to bribes). If, however, the Court does instruct the jury regarding gratuities, it should use the proposed instructions attached to this letter.[1]

**I.    Section 666 Does Not Criminalize Gratuities**

      The government contends that § 666 prohibits the payment of gratuities as well as bribes. While bribery requires a quid pro quo exchange of payments for official action, a gratuity is "a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken." *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404-05 (1999). Although the Second Circuit has adopted the government's interpretation of § 666, this reading of the statute is fundamentally incorrect. We explain why this is so, both to preserve the issue in the event of an appeal and because it is relevant to the choice of jury instructions for the government's gratuity theory.

      It makes sense to start by looking at a statute that unambiguously *does* criminalize both bribes and gratuities: 18 U.S.C. § 201, the anti-corruption statute specific to federal officials. *See Sun-Diamond*, 526 U.S. at 404.

      Section 201 discusses bribes and gratuities in separate subsections. The provision for bribe payors covers any person who, "directly or indirectly, corruptly gives, offers or promises anything of value to any public official . . . or offers or promises any public official . . . to give

---

[1] We have conferred with the government, which has advised us that it disputes our arguments.

Hon. Vernon S. Broderick
July 23, 2017                                                                                                                    Page 2

anything of value to any other person or entity, with intent . . . to influence any official act." 18 U.S.C. § 201(b)(1).  The provision for bribe recipients covers any "public official" who, "directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for . . . being influenced in the performance of any official act." *Id.* § 201(b)(2).

      The provision for gratuity payors covers any person who, "otherwise than as provided by law for the proper discharge of official duty[,] . . . directly or indirectly gives, offers, or promises anything of value to any public official . . . for or because of any official act performed or to be performed by such public official." *Id.* § 201(c)(1)(A).  The provision for gratuity recipients covers any "public official" who, "otherwise than as provided by law for the proper discharge of official duty, directly or indirectly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of any official act." *Id.* § 201(c)(1)(B).

      Section 666, by contrast, does not contain separate subsections of this sort for bribes and gratuities.  Instead, the provision for payors covers any person who "corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent" of a federally funded organization or government "in connection with any business, transaction, or series of transactions of such organization [or] government." 18 U.S.C. § 666(a)(2).  The provision for recipients covers any "agent" of a federally-funded organization or government who "corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization [or] government." *Id.* § 666(a)(1)(B).

      The Second Circuit has "interpreted § 666 to impose criminal liability for both kinds of crime proscribed by § 201:  bribery and illegal gratuities." *United States v. Ganim*, 510 F.3d 134, 150 (2d Cir. 2007); *accord United States v. Bahel*, 662 F.3d 610, 636-38 (2d Cir. 2011).  Pointing to the "influence or reward" language, the Second Circuit reasons that "a payment made to 'influence' connotes bribery, whereas a payment made to 'reward' connotes an illegal gratuity." *Ganim*, 510 F.3d at 150.

      With respect, the Second Circuit is incorrect.  As the First Circuit explained in *United States v. Fernandez*, 722 F.3d 1 (1st Cir. 2013):

> [T]he word "reward" does not create a separate gratuity offense in § 666, but rather serves a more modest purpose:  it merely clarifies "that a bribe can be promised before, but paid after, the official's action on the payor's behalf." *United States v. Jennings,* 160 F.3d 1006, 1015 n. 3 (4th Cir.1998).  "This definition accords with the traditional meaning of the term 'reward' as something offered to induce another to act favorably on one's behalf (for example, a bounty offered for the capture of a fugitive)." *Id.*  Under this reading, the terms "influence" and "reward" each retain independent meaning.  "Influence" would be used in situations in which, for instance, a payment was made to a local government commissioner in order to induce him to vote in a certain way on a

>particular matter. "Reward" would be used if a *promise* of payment was made, contingent upon that commissioner's vote; once the commissioner voted in the way the payor requested, a "reward" would follow. Both of these situations involve a quid pro quo, and both therefore constitute bribes. What matters, of course, is that the *offer* of payment precedes the official act.

*Id.* at 23. At a minimum, the word "reward" is ambiguous, and a sound analysis of § 666 would look to other evidence of meaning before concluding that it criminalizes gratuities.

This evidence decisively shows that § 666 is limited only to bribery. *First*, as noted above, there is an "important structural difference between §§ 666 and 201: § 666 does not have separate bribery and gratuity subsections." *Id.* at 24. Thus, "[f]or those circuits that have found that § 666 criminalizes gratuities, two subsections of § 666 do the same work as four subsections of § 201." *Id.* It is highly "unlikely that Congress would condense two distinct offenses into the same subsection in § 666 when the statute upon which it is based has separate subsections for each offense." *Id.* at 24-25. And "if Congress did choose to condense bribes and gratuities into a single provision in § 666, it would be odd to do so by merely plugging slightly modified language from § 201(b), its bribery provision, into the statute." *Id.* at 25.

*Second*, the penalty provisions of § 201 and § 666 make clear that Congress did not intend for § 666 to cover gratuities. The maximum sentence for bribing a federal official is fifteen years, *see* 18 U.S.C. § 201(b), and the maximum sentence for paying a gratuity to a federal official is two years, *see id.* § 201(c). By contrast, the maximum sentence for violating § 666 is ten years, regardless of whether the defendant intended to "influence" or to "reward" the agent of the federally funded entity. *See id.* § 666(a).

As a result, the Second Circuit's extension of § 666 to gratuities has the perverse effect of "permit[ting] greater punishments to persons who give gratuities to state and local officials than to persons who give gratuities to federal officials." *United States v. Crozier*, 987 F.2d 893, 900 (2d Cir. 1993). The maximum sentence under § 666 is "*five times* longer than that allowed by § 201's gratuities provision." *Fernandez*, 722 F.3d at 24. Congress surely cannot have intended to punish the payment or receipt of gratuities more harshly simply because the recipient is a state or local official, rather than a federal one. Indeed, the maximum sentence for *bribing* a federal official or receiving a bribe as a federal official under § 201(b) is significantly longer than the maximum sentence under § 666. This is "understandable" because "[i]t is reasonable to assume that the federal government viewed corrupt federal officials involved in the receipt of bribes as more culpable." *Id.* at 24. Punishing *non*-federal officials more harshly when it comes to gratuities, however, makes no sense.[2]

---

[2] By contrast, it does make sense to exempt non-federal officials from punishment for gratuities. Because bribes are "far more of a threat to the proper functioning of federally funded programs than gratuities," the "federal interest" in prohibiting them is significantly "stronger." *Fernandez*, 722 F.3d at 25. Criminalizing gratuities given to state and local officials risks "venturing too far" into "the political processes of the state." *Id.* Gratuities implicate "a range of government ethics issues that may be better handled at the state level," and "[s]tates may differ about whether

Moreover, extending § 666 to gratuities has the bizarre effect of attaching the same ten-year maximum sentence to both bribes and gratuities. Congress plainly did not believe that bribes and gratuities were equally culpable, which is why § 201 provides starkly different punishments for the two types of payments. *See Sun-Diamond,* 526 U.S. at 405 (observing that "[t]he punishments prescribed for the two offenses reflect their relative seriousness"); *Fernandez,* 722 F.3d at 25 (noting that "bribes are simply worse than illegal gratuities"). The fact that only a single set of punishments applies to § 666 suggests that it does not cover two dramatically different types of corruption offenses.

*Third*, extending § 666 to gratuities creates unwarranted disparities in the types of conduct subject to prosecution. Under § 201, payments to the public official *or* a third party qualify as illegal bribes if the donor intends to exchange them for official acts. *See* 18 U.S.C. § 201(b)(1), (2) (covering payments to the public official or "any other person or entity"). Payments qualify as illegal gratuities, however, only if they benefit the public official "personally." *Id.* § 201(c)(1)(B); *accord id.* § 201(c)(1)(A) (covering payments to the public official, but not any other person or entity). Under § 666, payments intended to "influence or reward" the non-federal official are criminal when paid to or for the benefit of "any person." 18 U.S.C. § 666(a)(1)(B), (a)(2). Thus, if § 666 covered gratuities, a payment to a non-federal official's favorite charity could qualify as a gratuity, while the same would not be true for a federal official. Again, this makes no sense whatsoever.

*Fourth*, the legislative history confirms that § 666 does not cover gratuities. Section 666 was enacted as part of the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837 (1984). The section that became § 666 was entitled "Program Fraud and Bribery." *Id.* Sec. 1104.[3] According to the Senate report, § 666 was intended to "augment the ability of the United States to vindicate significant acts of theft, fraud, and *bribery* involving Federal monies which are disbursed to private organizations or State and local governments pursuant to a Federal program." S. Rep. No. 98-225, 369 (1984) (emphasis added); *see also id.* at 370 (purpose of § 666 is to "protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery"). Indeed, the report "speaks entirely in terms of 'bribery,' and never uses the words 'gratuity' or 'gift.'" *United States v. Jackowe*, 651 F. Supp. 1035, 1036 (S.D.N.Y. 1987), *disapproved by Crozier*, 987 F.2d 893; *accord Fernandez*, 722 F.3d at 25 ("the word 'gratuity' . . . is, of course, mentioned nowhere in the text or legislative history of § 666").

The original version of § 666 differed from the current law in that it covered payments made "for or because of the recipient's conduct" in connection with transactions of the federally

---

to treat them as criminal offenses, rely on civil enforcement, or utilize nonpunitive remedies." George D. Brown, *Stealth Statute-Corruption, the Spending Power, and the Rise of 18 U.S.C. § 666*, 73 Notre Dame L. Rev. 247, 310 (1998). Accordingly, Congress may have intended for "states to play a laboratory role" in regulating gratuities. *Id.*

[3] References to "fraud" and "theft" in the legislative history concern § 666(a)(1)(A), which criminalizes embezzlement, theft, and fraud by agents of federally-funded entities.

funded entity. 18 U.S.C. § 666(c) (1984). The "for or because of" language parallels the language in § 201's gratuity provisions. However, this language changed two years later, when § 666 was amended by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. No. 99-646, 100 Stat. 3592 (1986). The 1986 amendment replaced the "for or because of" language with the "intending to be influenced or rewarded" and "with intent to influence or reward" language found in the current version of § 666, and it also added the "corruptly" element. In both of these respects, the "post-amendments language is much closer to that found in 18 U.S.C. § 201(b)— § 201's *bribery* provision." *Fernandez*, 722 F.3d at 22. Moreover, the House report described the amendment without even mentioning gratuities:

> 18 U.S.C. 666 prohibits *bribery* of certain public officials, but does not seek to constrain lawful commercial business transactions. Thus, 18 U.S.C. 666 prohibits corruptly giving or receiving anything of value for the purpose of *influencing* or *being influenced* in connection with any business, transaction, or series of transactions. The provision parallels the bank *bribery* provision (18 U.S.C. 215).

H.R. Rep. No. 99-797, 30 n.9 (1986) (emphasis added), *reprinted in* 1986 U.S.C.C.A.N. 6138.

*Fifth*, any ambiguity in § 666 should be resolved in favor of a narrow construction that does not cover gratuities, which is consistent with the rule of lenity and avoids constitutional concerns such as fair notice and federalism. *See, e.g.*, *McDonnell v. United States*, 136 S. Ct. 2355, 2373 (2016); *Yates v. United States*, 135 S. Ct. 1074, 1088 (2015). Indeed, in one of the earliest opinions to consider whether § 666 covers gratuities, Judge Sweet concluded that a narrow reading "avoids any potential problems of fair notice arising out of ambiguity on this point because of § 666's silence, and avoids any potential constitutional claims of disproportionality or equal protection due to the difference in punishment that would be authorized for those who give gifts to federal as opposed to state or private employees engaged in the same type of enterprise." *Jackowe*, 651 F. Supp. at 1036.

It is therefore evident that § 666 does not prohibit gratuities. Any reconsideration of the issue by the Second Circuit en banc, or Supreme Court resolution of the existing circuit split, *see Fernandez*, 722 F.3d at 23, is not likely to favor the government.

## II. The Government's Proposed Gratuity Instructions Should Be Rejected

If, despite the considerations above, the Court instructs the jury on the government's gratuity theory, it should use the alternative proposal attached hereto, and not the government's proposed instructions (*e.g.*, Dkt. 472 at 23-36), which are legally erroneous in multiple respects.

An illegal gratuity charge requires "that some particular official act be identified and proved," and that the gratuity payment be "linked to [this] identifiable act." *Sun-Diamond*, 526 U.S. at 406; *see also id.* at 408 (violation must be "linked to a particular 'official act'"); *United States v. Tavares*, 844 F.3d 46, 55 (1st Cir. 2016) (holding that *Sun-Diamond* imposed "a strictly worded requirement that the government show a link to a specific official act") (quotation marks omitted) (quoting *Ganim*, 510 F.3d at 146); Gov't's Mem. Of Law In Opp'n To Defs.' Pretrial

Mot. at 27, *United States v. Skelos*, No. 15-cr-317 (S.D.N.Y. Sept. 25, 2015), ECF No. 27 ("[T]he Supreme Court held that an illegal *gratuity* must be linked to a specific official action."). Linking the gratuity to a particular act is necessary to avoid the "peculiar result[]" of criminalizing routine political conduct, such as the giving of "token gifts" to officials "based on [their] official position." *Sun-Diamond*, 526 U.S. at 406.

Request No. 18, the proposed instruction differentiating between bribes and gratuities, does not adequately communicate this point. (Dkt. 472 at 32-33). Granted, the instruction correctly states that for a gratuity conviction, the government must prove "that there was a link between a thing of value conferred on the public official, and a specific official act for or because of which the defendant gave, offered, or agreed to give the payment." (*Id.* at 32). But the instruction goes on to state that "[t]o convict on an illegal gratuities theory, you must find that the defendant had the intent to reward the Antiguan Ambassador or the Dominican Ambassador in connection with some business or transaction of the United Nations." (*Id.* at 33). This vague language only serves to minimize the "link" and "official act" requirements articulated in *Sun-Diamond*. It therefore heightens the risk that Mr. Ng could be convicted under a gratuity theory for conduct that is not a crime, and should be rejected.[4]

The proposed instruction also contains language improperly suggesting that a payment may qualify as an illegal gratuity if the recipient accepts it intending to be rewarded for an official act, regardless of the payor's intent. (*See id.* at 32 ("But if a public official conducts certain official business in a perfectly honest and proper manner and later accepts a financial benefit intending to be rewarded for that past activity, this is a violation of the law.")). This is plainly not the law. *See* 18 U.S.C. § 666(a)(2) (requiring the payor to act with the "intent to influence or reward").

In addition, the government's proposed instructions fail to communicate another important concept: in order to be guilty of paying an illegal gratuity, the payor must intend to enrich the recipient personally. As explained above, a gratuity conviction under § 201, unlike a bribery conviction, requires the donor to confer a personal benefit on the recipient. *See also United States v. Brewster*, 506 F.2d 62, 72 n.6, 76-77, 81 (D.C. Cir. 1974) ("What is outlawed is only the knowing and purposeful receipt by a public official of a payment, made in consideration of an official act, *for himself*.") (emphasis added); DOJ Criminal Resource Manual, § 2041 ("In addition, with a 'bribe' the payment may go to anyone or to anything and may include campaign

---

[4] The instruction also waters down the quid pro quo requirement for bribery. There is only one sentence in the government's § 666 instructions that communicates the idea of a quid pro quo exchange: "for bribery there must be a *quid pro quo* – a specific intent to give or receive something of value in exchange for an official act." (Dkt. 472 at 32). But on the very next page, the instruction states that "[t]o convict on a bribery theory, you must find that the defendant had the intent to influence the Antiguan Ambassador or the Dominican Ambassador, in connection with some business or transaction of the United Nations." (*Id.* at 32-33). The notion of "influence" is insufficiently specific to convey the requirement of an intended "exchange." (*See* Dkt. 478 at 9-10).

contributions, while with a 'gratuity' the payment must inure to the personal benefit of the public official and cannot include campaign contributions."); *id.* §§ 2045-46.[5] Even if we entertain the fiction that Congress intended for § 666 to cover gratuities, there is no reason to believe that Congress intended to criminalize a greater range of gratuities in the § 666 context, where the federal interests are significantly less weighty.

      This is most obvious in the case of campaign contributions and other political donations. Individuals frequently give campaign contributions to reward public officials for specific official acts. Plainly, however, the First Amendment does not permit the government to criminalize such payments merely because they are linked to official acts. *See McCormick v. United States*, 500 U.S. 257, 273 (1991) (holding that campaign contributions are bribes "only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act," in which "the official asserts that his official conduct will be controlled by the terms of the promise or undertaking"); *Ganim*, 510 F.3d at 142 (explaining that "proof of an *express* promise is necessary when [alleged bribe] payments are made in the form of campaign contributions").

      We propose alternative instructions, attached here as an exhibit, in order to ensure that the jury is properly instructed on these principles. Our prior requests to charge for the § 666 counts included a complete set of instructions for the elements of the bribery theory. The attached exhibit includes a separate set of instructions for the elements of the gratuity theory, which the Second Circuit has grafted onto § 666. These two parallel sets of instructions make clear the several differences between the two theories, which are either blurred or completely elided in the government's proposed instructions.

      Our proposed instructions correctly articulate the law of gratuities as described by the Supreme Court in *Sun-Diamond* and by the Second Circuit in the § 666 context (such as in *Bahel*, 662 F.3d at 635-37). The instructions explain that "[u]nlike a bribe, an illegal gratuity does not involve a quid pro quo exchange" and instead constitutes a "reward" for an "official act." And they clearly describe *Sun-Diamond*'s requirement of a "link between a thing of value conferred by the defendant and a specific official act for or because of which it was given"—namely, the defendant's "inten[t] to reward the agent for a specific official act," and not merely because of the agent's connection to UN business.

      The instructions also underscore that "the defendant must intend to personally enrich the agent of the United Nations" and, consequently, that payments to third parties or the Office of the PGA do not count as gratuities. This is faithful to the *McCormick* line of cases that shields political donations from prosecution, and it avoids extending the § 666 gratuity theory to payments that, as evidenced by § 201, Congress clearly did not intend to criminalize. The Court should therefore use these instructions in lieu of those proposed by the government.

---

[5] Available at https://www.justice.gov/usam/criminal-resource-manual.

Hon. Vernon S. Broderick
July 23, 2017                                                                                                          Page 8

                                             Respectfully submitted,

                                             /s/ Alexandra A.E. Shapiro

                                             Alexandra A.E. Shapiro


cc:   All Counsel of Record (via ECF)