

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 4, 2017

**BY ECF**

The Honorable Vernon S. Broderick
United States District Judge
Thurgood Marshall United States Courthouse, Room 415
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Ng Lap Seng*,
                S5 15 Cr. 706 (VSB)

Dear Judge Broderick:

      The Government respectfully writes in advance of the bail revocation hearing scheduled in the above-captioned matter for this Monday, August 7, 2017, at 10:00 a.m. For the reasons previously discussed with the Court and set forth below, in light of the defendant's conviction on all counts and the unprecedented risk of flight that he presents, the Court should revoke the defendant's bail. It is the defendant's burden to demonstrate, by clear and convincing evidence, that he warrants bail pending sentencing. He cannot satisfy that burden.

      Applicable Law

      The law provides that a court "shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained," unless the court "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a)(1). In short, following conviction, there is "a presumption in favor of detention." *United States* v. *Abuhamra*, 389 F.3d 309, 320 (2d Cir. 2004). It is the defendant's burden "to defeat that presumption," and he must do so "by clear and convincing evidence, not by a mere preponderance." *Id.* Only if he does so "is he entitled to release pending sentencing." *Id.*; *see also* Fed. R. Crim. Pro. 46 (c) (following conviction, "[t]he burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant").

Honorable Vernon S. Broderick
United States District Judge
August 4, 2017
Page 2

Discussion

During a lengthy bail hearing on October 22, 2015, the Court found that the defendant's risk of flight was so extreme that his presence in court could not be reasonably assured with even the most stringent bail conditions that this and other courts typically impose on defendants who present a risk of flight.  (*See* October 22, 2015 Bail Hearing Transcript, at 43.)  The defendant's risk of flight was extreme for multiple reasons:

- He was immensely wealthy, with a net worth of more than a billion dollars, and had access to significant liquid assets.
- He regularly traveled to and from the United States by private plane, and there could be no assurance that he lacked access to such a plane simply because he had been arrested.
- He had no personal connections, of any kind, to the United States.
- He was a citizen of multiple foreign countries.
- His home country, China, has no extradition treaty with the United States, and he described himself as affiliated with the government of China.
- He had uncharged co-conspirators and/or associates, who had every incentive and ability to assist him.
- He was in his late 60s, and faced multiple, extremely serious criminal charges, with a lengthy advisory Guidelines range.

None of this has changed, except, most importantly, that the defendant has now been convicted of multiple serious crimes.  He no longer can assert, as he did previously, that he expected to be acquitted and thus had no meaningful incentive to flee (*see, e.g.*, Docket Entry No. 313).  Whatever that argument's merits, having been made at a time when the defendant was presumed innocent, it is now unavailable.  The defendant now faces punishment—and under the Guidelines, severe punishment—far from home.  And home is a country that has no extradition treaty with the United States.  It is difficult to overstate how much the defendant's incentive to flee has increased.  It is also difficult to imagine any defendant, in any court, with as great resources and connections to seek to do so.  Moreover, fleeing would not necessarily require leaving the country.  If the defendant were only to make it to the Chinese Mission to the United Nations (less than 1.5 miles from his apartment) or the Chinese Consulate (less than 2 miles from his apartment), he could be beyond the reach of law enforcement.

At the same time, it is no longer the Government's burden to demonstrate that the defendant should be detained, but the defendant's burden to demonstrate, by *clear and convincing evidence*, why he should not be detained.  After the jury returned its verdict of guilty on all counts, the defendant offered two reasons why the Court should conclude that the defendant could meet this heavy burden.  Neither reason, whether separately or in combination, comes close to doing so.

*First*, the defendant stated that he had not yet fled. That is irrelevant. The defendant's incentive to flee has considerably increased. That he has not previously fled says nothing about whether he will seek to do so now that he has been convicted of all counts and faces significant punishment.

Further, the defendant has proven that he cannot consistently abide by the stringent bail conditions that the Court previously set. On the contrary, as the Court is aware, the Government discovered that the defendant made an unauthorized visit to a restaurant, in violation of the Court's bail order, in November 2016. (*See* Docket Entry No. 340.) Guidepost Solutions LLC ("Guidepost") has subsequently acknowledged that the defendant made multiple such visits, while suggesting that it did not understand this to be impermissible. That suggestion is not in accord with facts. The express terms of this Court's bail order have never permitted the defendant to go to a restaurant. (*See* Docket Entry No. 53, ¶ 2 ("Defendant shall only be permitted to leave the Residence to (a) appear at the Thurgood Marshall United States Courthouse . . . ; (b) meet with his counsel . . . ; or (c) to receive medical treatment, and Defendant shall provide notice and obtain the approval of Pretrial Services for such visits[.]").) Moreover, Pretrial Services had previously and repeatedly made clear to defense counsel—including in one email on which Guidepost was copied—that trips to restaurants were not authorized.[1] Yet the defendant made multiple such trips, until the Government learned of one of them. The defendant's willingness to evade his prior bail conditions, and Guidepost's willingness to permit the defendant to do so (or at the very least, failure to understand what is not permitted), combined with the defendant's now-enhanced motive to flee, substantially undermines any probative value of the fact that he has not yet fled.

This history also demonstrates what common sense supports and courts have recognized: The incentives and practices of Guidepost—which the Government believes is being paid more than $140,000 a month by the defendant—are very different from those of the Federal Bureau of Prisons or United States Marshals Service. *See United States* v. *Zarrab*, No. 15 Cr 867 (RMB), 2016 WL 3681423, at *10 (S.D.N.Y. June 16, 2016) ("The privately funded armed guard regime proposed by the defense is not reasonable because, in too many respects, it substitutes judicial oversight and management for (more appropriate) reliance upon trained, experienced, and qualified professionals from the U.S. Bureau of Prisons and the U.S. Marshals Service."); *United States* v. *Cilins*, No. 13 Cr. 315 (WHP), 2013 WL 3802012, at *3 (S.D.N.Y. July 19, 2013) (expressing concern that "'that individuals otherwise ineligible for release should be able to buy their way out by constructing a private jail, policed by security guards not trained or ultimately accountable to the Government'" (quoting *Borodin* v. *Ashcroft*, 136 F. Supp. 2d 125, 134 (E.D.N.Y. 2001))); *see also United States* v. *Zhong*, No. 16 Cr. 614 (DLI), Docket Entry No. 31,

---

[1] In December 2015, defense counsel sought consent for the defendant to visit a restaurant. Pretrial Services objected, in an email copying Guidepost, explaining that the "defendant remains on home incarceration, which does not permit any social function." In July 2016, defense counsel sought consent for the defendant to have "weekly lunches, Monday to Friday, during his scheduled attorney's visits, occasional dinners with his family members at a restaurant in Manhattan or Queens, and regular scheduled time to be outside of his apartment." The Government objected, as did Pretrial Services, which noted that these activities are "not consistent with home incarceration."

Honorable Vernon S. Broderick
United States District Judge
August 4, 2017
Page 4

at 6-7 (E.D.N.Y. Jan. 3, 2017) (noting that a Guidepost representative did not limit his comments at a bail hearing to describing a proposed security package, but affirmatively argued for release, including asserting that the defendant did not pose a risk of flight because he had "real roots in the community").

And irrespective of whether a court should consider a private security arrangement in determining whether a newly-arrested defendant, who is presumed innocent, should be granted bail pending trial, a court need not and should not consider the same arrangement in determining whether a convicted defendant should be granted bail pending sentencing. "Post-conviction, a defendant no longer has a substantive constitutional right to bail pending sentencing." *United States* v. *Madoff*, 316 F. App'x 58, 59 (2d Cir. 2009). At bottom, what the defendant asks is for this Court to permit him to continue to "buy [his] way out" of detention, *United States* v. *Banki*, 369 F. App'x 152, 154 (2d Cir. 2010), notwithstanding his conviction on all counts—and with it, the removal of the presumption of innocence and the imposition of a presumption of detention. The Court should decline the defendant's invitation, which would "foster inequity and unequal treatment in favor of a very small cohort of criminal defendants who are extremely wealthy." *Zarrab*, 2016 WL 3681423, at *13. Whatever the law might permit when a defendant is presumed innocent, the defendant no longer is.

*Second*, the defendant stated that he expects to file a post-trial motion and, if that fails, an appeal. Such a statement may be made by any defendant convicted after trial—and typically is. It does not satisfy the defendant's burden to demonstrate "by clear and convincing evidence" that, under the specific facts and circumstances of his particular case, he "is not likely to flee." 18 U.S.C. § 3143(a)(1). The defendant's self-interested assertion that he believes he has meritorious issues to present in post-trial motion practice or on appeal is just that—a self-interested assertion. It is not evidence, much less sufficient evidence, to carry the defendant's burden. Moreover, this Court has already denied the defendant's motion for acquittal under Federal Rule of Criminal Procedure 29, and rightly so. That leaves a motion for a new trial under Federal Rule of Criminal Procedure 33. But such a motion may be granted only where there is "a real concern that an innocent person may have been convicted." *United States* v. *Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) (internal quotation marks omitted). The Court can have no such concern here.

* * *

The defendant has long presented an extreme risk of flight. That risk is now markedly heightened. At the same time, the defendant now has the burden to demonstrate by clear and convincing evidence that, notwithstanding his conviction on all counts, he should remain on bail pending sentencing. He cannot meet that burden, and must be detained.

Honorable Vernon S. Broderick
United States District Judge
August 4, 2017
Page 5

                                              Respectfully submitted,

                                              JOON H. KIM
                                              Acting United States Attorney

By:    s/ Daniel C. Richenthal
         Daniel C. Richenthal
         Janis M. Echenberg
         Douglas S. Zolkind
         Assistant United States Attorneys
         (212) 637-2109/2597/2418

         SANDRA MOSER
         Acting Chief, Fraud Section
         Criminal Division

By:    s/ David A. Last
         David A. Last
         Trial Attorney
         (202) 616-5651

cc:    (by ECF)

       All Counsel of Record