UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>NG LAP SENG, AKA DAVID NG, AKA DAVID NG LAP SENG,<br><br>Defendant. | Case No. 15-cr-706-3 (VSB)<br><br>**Ng Lap Seng's Reply in Further Support of His Motion for Compassionate Release** |

Federal inmate Ng Lap Seng (Register # 92441-054) submits this reply to address certain arguments made by the Government in its April 10, 2020, response. (*See* ECF Doc. 936 (Resp.)).

**This Court Should Excuse Ng's Failure to Exhaust His Administrative Remedies**[1]

For efficiency purposes, Ng respectfully adopts the exhaustion arguments made to this Court by the defendant in *United States v. Hart*. *See Hart*, 17-cr-248 (S.D.N.Y.), ECF Doc. 250.

Moreover, since the filing of Ng's Motion for Compassionate Release, at least three judges have waived § 3582(c)(1)(A)'s exhaustion requirement. *See United States v. Sawicz*, No. 08-cr-287, 2020 WL 1815851, at 2 (E.D.N.Y. Apr. 10, 2020) (Ross. J.) ("I waive [§ 3582(c)(1)(A)'s] exhaustion requirement in this case."); *United States v. McCarthy*, 17-cr-230, 2020 WL 1698732, at 4 (D. Conn. Apr. 8, 2020) (Hall, J.) ("[T]he court waives the exhaustion requirement of section 3582(c)(1)(A)."); *Miller v. United States*, No. 16-cr-20222, 2020 WL 1814084, at 2 (E.D. Mich. Apr. 9, 2020) ("[T]he Court may waive [§ 3582(c)(1)(A)'s] exhaustion requirement if a recognized exception applies."); *see also United States v. Zukerman*, No. 16-cr-194, 2020 WL 1659880, at 2 (S.D.N.Y. Apr. 3, 2020) (Torres, J.) ("Zukerman's exhaustion of [§ 3582(c)(1)(A)'s]

---

[1] Ng's case manager still has not returned one of the undersigned's voicemail message that was left ten days ago and that sought the status of Ng's § 3582(c)(1)(A) petition. (*See* Mot. at 3).

1

administrative process can be waived in light of the extraordinary threat posed—in his unique circumstances—by the COVID-19 pandemic.").

The Government argues that, although statements in the Supreme Court's opinion in *Bowen v. City of New York*, 476 U.S. 467 (1986), support Ng's exhaustion argument, those statements are "arguably dicta" and "in stark tension with *Ross* [*v. Blake*, 136 S. Ct. 1850 (2016),] and other more recent Supreme Court precedents." (Resp. at 12). To the extent the Government's position is that two higher courts (the Supreme Court in *Bowen*, and the Second Circuit in *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019)) made erroneous statements of the law, the Government should take up the issues with the higher courts, not this Court.

The Government also argues that the Supreme Court's opinions in *Bowen* and in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "stand at most for the proposition that the specific statutory exhaustion requirement at issue in those cases can be excused by a court where the two-part *Eldridge* test is satisfied." (Resp. at 11). But nothing in the *Bowen* or *Eldridge* opinions suggests that their holdings were limited to the statutory exhaustion requirement at issue in those cases.

Finally, the Government asserts (in a footnote and without analysis) that, "even if *Eldridge* and *Bowen* were applicable here," Ng's "claim before this Court is not collateral to the claim he is raising with the BOP" and so the "[*Eldridge*] test . . . would not be satisfied." (Resp. at 14 n. 3; *see Bowen*, 476 U.S. at 483 (noting that one of "factors [that] influenced the [Supreme] Court's judgment that *Eldridge* was a case in which deference to the agency's determination of finality was not necessary" was that "the constitutional challenge brought there was entirely collateral to a substantive claim of entitlement" (brackets and internal quotation marks omitted)). But here, Ng's legal claims (e.g., that he would suffer undue prejudice if he were exhaust his administrative

remedies before seeking federal court intervention) are collateral to the request for release made in his petition to the BOP.

In any event, it is not necessary that Ng's legal claims be collateral to his BOP request. *See City of New York v. Heckler*, 742 F.2d 729, 736 (2d Cir. 1984) ("The [Supreme] Court has approved judicial waiver where plaintiff's legal claims are collateral to the demand for benefits, where exhaustion would be futile, *or* where the harm suffered pending exhaustion would be irreparable." (citing *Eldridge*, 424 U.S. at 330–32) (emphasis added)); *Smith v. Schweiker*, 709 F.2d 777, 780 (2d Cir. 1983) ("A waiver of the exhaustion requirement may be inferred where the plaintiffs' legal claims are collateral to their demand for benefits, where exhaustion would be a *pro forma* or futile gesture, or where the harm suffered in the interim would be irreparable in the sense that no *post hoc* relief would be adequate." (citing *Eldridge*, 424 U.S. at 330–31)). And the Government has not challenged Ng's arguments that exhaustion would be futile and would result in irreparable harm. (*See* Mot. at 5–7).

**Ng has Demonstrated "Extraordinary and Compelling Reasons" for Compassionate Release**

In arguing that Ng's motion should be denied on the merits, the Government states that "every federal prisoner with heart disease and/or diabetes or similar conditions . . . would be entitled to immediate and permanent release" if Ng's "apparent logic" were accepted. (Resp. at 14). But Ng has no history of violent conduct and (given that he is a 71-year-old male with multiple serious underlying health issues) is at extremely high risk of severe illness or death from a coronavirus infection.[2] The issue before this Court is whether Ng has presented "extraordinary and compelling reasons" for compassionate release, not whether all nonviolent inmates who have similar health conditions as Ng should be granted compassionate release.

---

[2] Contrary to the Government's assertion, Ng has not "suggest[ed] that anyone at high risk for COVID-19 complications should be immediately released." (*See* Resp. at 22).

3

The Government argues that the BOP's implementation of its "COVID-19 Action Plan" "belie[s] any suggestion that the BOP is failing to address meaningfully the risk posed by COVID-19 to inmates." (Resp. at 20). What the Government totally ignores is that the BOP's own statistics demonstrates that its action plan was, and still is, wholly ineffective:

| DATE | Number of COVID-19 Inmates | Number of COVID-19 Staff Members |
|---|---|---|
| March 24, 2020 | 6 | 4 |
| March 26, 2020 | 10 | 8 |
| March 27, 2020 | 14 | 13 |
| March 31, 2020 | 28 | 24 |
| April 2, 2020 | 75 | 39 |
| April 3, 2020 | 91 | 50 |
| April 4, 2020 | 120 | 54 |
| April 5, 2020 | 138 | 59 |
| April 7, 2020 | 241 | 73 |
| April 8, 2020 | 253 | 85 |
| April 11, 2020 | 335 | 185 |
| April 12, 2020 | 352 | 189 |

The Government points out that there have been no confirmed COVID-19 cases in FCI-Allenwood Low. (Resp. at 20). Once again, the BOP's own statistics demonstrate that its action plan is ineffective to prevent the coronavirus from spreading to Ng's prison. For example, although there were no "Open COVID-19 Tested Positive Cases" with respect to MDC Brooklyn as of April 4, 2020 (*see* Mot., Ex. H), the BOP reported the next day that an inmate had tested positive for the coronavirus (even though the latest "phase" of the BOP's action plan became effective on April 1, 2020). (Ex. A: Copy of BOP's Webpage (Apr. 5, 2020)). As of yesterday, at least 4 inmates and 12 staff members at MDC Brooklyn have the coronavirus. (Ex. B: Copy of

BOP's Webpage (Apr. 12, 2020)). Ng is seeking to get released before it is too late—before the coronavirus spreads to his prison and before he gets infected.

It is unclear why it is relevant that Ng's heart disease and diabetes "predate his incarceration by years" and are "stable and manageable." (*See* Resp. at 21). Given Ng's multiple serious underlying medical conditions, he is at extremely high risk of severe illness or death from a coronavirus infection—whether or not his medical conditions "predate his incarceration" or are "stable and manageable."

The Government argues that Ng does not "fall[] into the narrow band of inmates who are 'suffering from a serious physical or medical condition,' 'that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" (Resp. at 21–22 (quoting U.S.S.G. § 1B1.13 Application Note 1(A)(ii))). But Ng does not have to fall within that "narrow band of inmates" to be eligible for compassionate release. *See* U.S.S.G. § 1B1.13 Application Note 1(A)(ii) ("Provided the defendant [is not a danger to the safety of any other person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below: . . . there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).").

The Government argues that "the same Section 3553(a) factors that warranted the defendant's sentence counsel against [compassionate] release." (Resp. at 23). Although the § 3553(a) factors justified a 48-month prison sentence during Ng's original sentencing, counsel respectfully submits that this Court would have imposed a more lenient sentence at that time had it known the coronavirus pandemic was forthcoming.

5

**Ng's Eligibility for Home Confinement**

The Government believes that Ng "does not qualify for home confinement because he is not lawfully in the United States and is subject to an ICE detainer." (Resp. at 19 n.4). The Government points to no authority in support of its belief, and there appears to be no such authority.

Indeed, the Order of Judicial Removal that was issued against Ng shows that he could be granted home confinement despite his removability and the ICE detainer. Pursuant to INA § 238(c), this Court ordered that Ng "be removed from the United States promptly upon his release from confinement, or, if [he] is not sentenced to a term of imprisonment, promptly upon his sentencing." (ECF Doc. 782 (Judicial Removal order) at 2–3). Under the INA, "the order of removal shall become final and shall be executed at the end of the prison term in accordance with the terms of the order." INA § 238(c)(3)(iii).

The INA's only definition of "term of imprisonment" is contained at INA § 101(a)(48)(B), which provides that "[a]ny reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." "The canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, which [shows] that 'confinement' must mean something other than 'incarceration.'" *Herrera v. U.S. Atty. Gen.*, 811 F.3d 1298, 1301 (11th Cir. 2016) (citation, brackets, and some internal quotation marks omitted). And a 'term of imprisonment . . . includes . . . any suspension of the imposition or execution of . . . a sentence,' which suggests that it must encompass more than just time spent in jail." *Id.* (citation, brackets, and some internal quotation marks omitted; ellipses in original). Thus, if Ng is granted home confinement, the Order

of Judicial Removal will not take effect until he is "release[d] from [home] confinement." *See id.* ("The Board [of Immigration Appeals] reasonably concluded that house arrest, as a punitive measure that involves a serious restriction of liberty, constitutes confinement and is a 'term of imprisonment' under the Act. (internal quotation marks omitted)); *Ilchuk v. Attorney Gen. of U.S.*, 434 F.3d 618, 621, 623 (3d Cir. 2006) ("[W]e conclude the sentence [to house arrest with electronic monitoring] was a term of 'imprisonment' in the broad sense intended by the INA.").

The Government also argues that home confinement is not available for *any* defendant under § 3582(c). (Resp. at 25). But just a couple of weeks ago, the Chief Judge of this District granted a defendant compassionate release by ordering him to serve the remainder of his prison sentence in home confinement. *See United States v. Resnick*, No. 14-cr-810, 2020 WL 1651508, at 1, 7–8 (S.D.N.Y. Apr. 2, 2020) (McMahon, C.J.). Nevertheless, to the extent that a court cannot grant home confinement under § 3582(c)(1)(A), Ng requests that he be resentenced to time served and (as one of the many supervised release conditions) be confined to his apartment until December 23, 2021, his projected release date.

**Ng's Proposed Release Plan**

The Government asserts that Ng "does not propose any screening of or limitation on who may live or interact with him . . ., much less reliable and enforceable limitations."[3] (Resp. at 20; *see also id.* at 23 (asserting that Ng has "not cogently explained why both he and those with whom he lives and interacts allegedly would be safer if he were out of prison . . . and instead living in Manhattan, which has a high rate of COVID-19 infection and medical facilities that are struggling to keep up")). Given that Ng's life is on the line, he thought it was obvious that he would do whatever he could on electronic home confinement to decrease his risk of contracting the

---

[3] In his motion, Ng stated that he will live with either his daughter or wife, and maybe also a live-in housekeeper. (Mot. at 18).

7

coronavirus. But to state the obvious, Ng will take the utmost precautionary measures, including not allowing anyone into his apartment other than his one or two housemate(s); obtaining facemasks and other PPE (personal protective equipment) for himself and his housemate(s); and obtaining an ample supply of hand soap, disinfecting wipes, and other hygiene items to keep his apartment virus-free.

The Government asserts that Ng's proposed home confinement bond consists only "of a few millions dollars in real estate." (Resp. at 25). The Government overlooks that Ng is willing to "post a cash bond if that is deemed necessary by the Court." (*See* Mot. at 18).

The Government argues that, given Ng's "virtually unlimited resources, and that his conviction has been affirmed on appeal, nothing would be sufficient" to ensure that he will comply with his home confinement conditions. (Resp. at 25). But the Government ignores the fact that Ng never attempted to flee while he was on bail, even when he was facing decades of imprisonment and even after the issuance of the Judicial Order of Removal. Now, when Ng's projected release date is less than two years away, he has much less of an incentive to flee. Moreover, Ng is at extremely high risk of severe illness or death from a coronavirus infection and would not risk his life by fleeing instead of staying put in his Manhattan apartment.

Moreover, Ng complied with his bail conditions in all material respects. The Government notes that Ng "repeatedly failed to abide by the terms of bail by going to a restaurant, in violation of this Court's orders." (Resp. at 23). But as Ng previously explained to this Court:

> [Security company Guidepost Solutions LLC's] Responses note that on several occasions the security detail escorted Mr. Ng into a restaurant to order food to pick up to bring back to the residence while returning from Court-approved visits to his attorney's office. As Guidepost writes: "When notified by the Court that the security detail, while escorting Mr. Ng outside of his residence, should not be stopping to pick up food, this practice by the security detail stopped." (Exhibit B at 1.) Mr. Ng never attempted to flee on those occasions and, as Guidepost notes,

8

> "at all times referenced above, Mr. Ng was in the custody of the security detail."
> (*Id.*)

(ECF Doc. 615 at 4 n.3).

Ng's proposed home confinement conditions, and any additional conditions that may be imposed by this Court, would be more than adequate to assure that Ng will comply with home confinement.

WHEREFORE, for all the reasons stated in the Emergency Motion for Compassionate Release and the present Reply, this Court should grant Ng Lap Seng compassionate release and order him to serve the remainder of his prison sentence in home confinement (where he would be subject to GPS-enabled electronic monitoring and the condition of supervised release that are set forth in the Judgment in a Criminal Case) or, alternatively, resentence him to time served and order him to be confined to his apartment until December 23, 2021, under the same proposed home confinement conditions. At the very least, it is respectfully requested that this Court issue an order recommending that the BOP grant Ng Lap Seng's § 3582(c)(1)(A) petition.

Respectfully submitted,

_____
Benjamin Brafman, Esq.
Jacob Kaplan, Esq.
Stuart Gold, Esq.
Brafman & Associates, P.C.
767 3rd Avenue, 26th Fl.
New York, NY 10017
Tel: (212) 750-7800
Fax: (212) 750-3906