UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA                :

   -*v.*-                                        :        S5 15 Cr. 706 (VSB)

NG LAP SENG,                             :
  a/k/a "David Ng,"
  a/k/a "Wu Liseng,"                     :
  a/k/a "Boss Wu,"
                       Defendant.       :

------------------------------------------------------------x


# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN FURTHER OPPOSITION TO DEFENDANT NG LAP SENG'S MOTION FOR RELEASE

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

ROBERT ZINK
Chief, Fraud Section
Criminal Division

Daniel C. Richenthal
Janis M. Echenberg
Douglas S. Zolkind
Assistant United States Attorneys

David A. Last
Assistant Chief

- Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA            :

    -v.-                             :      S5 15 Cr. 706 (VSB)

NG LAP SENG,                         :
    a/k/a "David Ng,"
    a/k/a "Wu Liseng,"               :
    a/k/a "Boss Wu,"
                    Defendant.       :

---------------------------------------------------------------x
```

# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN FURTHER OPPOSITION TO DEFENDANT NG LAP SENG'S MOTION FOR RELEASE

The Government respectfully submits this memorandum of law in further opposition to the motion for release filed by defendant Ng Lap Seng, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu" (the "defendant") and in response to the defendant's reply dated yesterday, April 13, 2020.

## ARGUMENT

In its opening memorandum in opposition to the defendant's motion, the Government explained that his motion must be denied for failure to exhaust his administrative remedies, and that, in any event, he fails to discharge his burden to show that he, individually and at this time, is entitled to immediate and permanent release. The defendant's arguments to the contrary fail.

### I.  THE DEFENDANT'S MOTION MUST BE DENIED FOR FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES

In his reply, the defendant repeats that the Court may "waive[]" or "excuse" the exhaustion requirement. (Def. Reply 1.) That is incorrect, for the reasons set forth in the Government's opening memorandum, numerous decisions of other courts, and decisions issued

since that memorandum was filed. *See, e.g.*, *United States v. Rabadi*, No. 13 Cr. 353 (KMK) (S.D.NY. Apr. 14, 2020) (Dkt. 94, at 5) ("statutory exhaustion requirements, such as those in Section 3582(c), must be strictly enforced" (internal quotation marks omitted)); *United States v. Pourghannad*, No. 13 Cr. 507 (VB) (S.D.N.Y. Apr. 13, 2020) (Dkt. 30, at 2) ("The statute's language is crystal clear and contains no exceptions, based on futility or anything else."). But even assuming *arguend*o that the Court had authority, in limited circumstances, to waive or excuse compliance with the statutory requirement, it should not do so here, where (a) the defendant has far more than 30 days left on his sentence, and (b) there are zero known cases of COVID-19 at the defendant's facility of incarceration—contrary to the facts of the decisions previously cited by the defendant and those cited in his reply (*see* Def. Reply 1-2).

As multiple courts have recognized, the Federal Bureau of Prisons ("BOP") is best situated to make relative judgments about the merits of compassionate release requests—particularly at a time like this when many inmates, in different circumstances, are making requests advancing similar claims—and to adjudicate those requests in a consistent manner. *See, e.g.*, *United States v. Woodson*, No. 18 Cr. 845 (PKC), 2020 WL 1673253, at *4 (S.D.N.Y. Apr. 6, 2020). As Judge Briccetti explained yesterday:

> The BOP has been given the authority to make, or at least consider making, such motions for good reason. The BOP is well-suited to make an informed decision about whether there are "extraordinary and compelling reasons" in a particular defendant's case to warrant the extraordinary relief being sought—namely, early termination of a lawfully imposed prison sentence—taking into account critical data such as the defendant's medical history and institutional record. Particularly when many sentenced defendants are seeking compassionate release for essentially the same reason—fear of exposure to COVID-19 and the consequences thereof—the BOP should be given an opportunity to address these claims on a consistent basis. Fairness to all inmates, not just this inmate, is at stake. Congress, of course, gave the power to review such decisions to the federal courts, but that does not make the BOP's

> initial determination any less important. And it goes without
> saying that, in many cases, adversarial judicial review might not
> even be necessary; if the BOP decides to make a compassionate
> release motion, it is unlikely a court would deny it.

*Pourghannad*, No. 13 Cr. 507 (Dkt. 30, at 3) (denying motion of 66-year old defendant with diabetes and elevated blood pressure). In short, even if it had authority to do so, the Court should not bypass the process here.

## II. THE DEFENDANT HAS NOT DEMONSTRATED EXTRAORDINARY AND COMPELLING REASONS FOR HIS IMMEDIATE RELEASE

In its opening memorandum, the Government explained that, because the defendant's motion must be denied for failure to exhaust his administrative remedies, the Court need not reach the merits, but if the Court were to reach the merits, it should reject the motion (and for the same reasons, should reject the defendant's alternative request for a release recommendation to the BOP). Indeed, the Government explained, if the Court were to accept the defendant's apparent logic, every federal prisoner with heart disease and/or diabetes or similar conditions, regardless of the severity of those conditions, where the inmate is located, what the inmate did, the length of time left on his sentence, or what will follow release, would be entitled to immediate and permanent release, an approach that is unfeasible, unwarranted, and not consistent with the public interest or the applicable statutory framework.

In in a footnote in his reply (Def. Reply 3 n.2), the defendant disclaims that his motion rests on such logic, but it plainly does, at least for white-collar defendants. Nothing in his request distinguishes the defendant from numerous other inmates across the country seeking similar relief. On the contrary, given the stability of his medical conditions, and that he is in a long-term, low-security facility with no known cases of COVID-19, his request is far less compelling than that of others. It simply is not sufficient for the defendant to state that (a) he has certain conditions, (b) therefore if someone at his prison gets COVID-19 at some point in the

3

future, notwithstanding the BOP's extensive procedures, which appear to have been particularly effective at his facility, and (c) if he in turn gets COVID-19, then (d) he is likely to have complications, so he should be released now. Yet that is his argument. (*See* Def. Reply 4-5.) *See United States v. Raia*, No. 20-1033, --- F.3d ---, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release"); *cf. United States v. Gileno*, No. 19 Cr. 161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (defendant suffering from high blood pressure, high cholesterol, and asthma "has not shown that his medical issues, which remain largely the same as when he was sentenced, 'substantially diminish [his] ability . . . to provide self-care' within the correctional facility," and "the Court cannot assume that the [BOP] will be unable to manage the outbreak or adequately treat [the defendant] should it emerge at his correctional facility while he is still incarcerated" (brackets in original)).

As the Government previously explained, the defendant's argument is also misplaced given that he proposes to leave his facility in rural Pennsylvania, without any known cases of COVID-19, and move to and live with others in New York City. *Cf. United States v. Davenport*, No. 17 Cr. 61 (LAP) (S.D.N.Y. Apr. 9, 2020) (Dkt. 255, at 2) (denying motion of defendant with diabetes and heart disease; "there are no current cases of COVID-19 at [his facility] but . . . the town in which [the defendant] proposes to be released [by comparison] has one of the highest rates of COVID-19 infection").

In any event, as the Government explained, the same Section 3553(a) factors that warranted the defendant's sentence, and must be taken into account in weighing his motion, strongly counsel against release, particularly given that he has served less than half of his sentence. The defendant barely argues to the contrary. Instead, he focuses on questioning

4

whether, as the Government stated in its opening memorandum, if his motion were granted, he would be transferred to the custody of Immigration and Customs Enforcement ("ICE") rather than permitted to reside in Manhattan. (Def. Reply 6-7.) Whether this is questionable is a red herring, because release to a massive, multimillion dollar luxury apartment, with a live-in housekeeper, after serving less than half of a prison sentence, is not consistent with Section 3553(a) in this case. But in any event, the defendant is wrong to suggest that there is some question as to whether he would be transferred to ICE custody if his motion were granted.

The BOP has confirmed that, as the Government stated, if the defendant were ordered released from prison, or his prison sentence were otherwise to conclude, he would be transferred to ICE custody. And contrary to the defendant's suggestion (Def. Reply 6), this fact does not turn on there being a judicial order of removal in place. That order simply makes removal from the United States, once a defendant is in ICE custody, more efficient (which is presumably why the defendant consented to the order). Such an order, however, is not the basis for the transfer. Rather, any defendant with an ICE detainer is subject to transfer to ICE custody upon completion of a prison sentence. *Cf., e.g.*, *Pourghannad*, No. 13 Cr. 507 (VB) (Dkt. 30, at 4) (defendant "would also be at risk for contracting the virus if he were in the custody of U.S. Immigration and Customs Enforcement ('ICE'), which has filed a detainer with the BOP and will take defendant into custody at the end of his prison sentence, or if he were deported to Iran").

Moreover, even if the defendant's transfer to ICE custody were dependent on there being a judicial order of removal in place (which it is not), the defendant does not cogently explain why his release from prison would not trigger the order. Rather, as the defendant acknowledges (Def. Reply 6), the law provides that "the order of removal shall become final and shall be

executed at the end of the prison term." 8 U.S.C. § 1228(c)(3)(A)(iii).[1] The defendant suggests that perhaps "prison term" does not actually mean prison term, because elsewhere the law defines a different phrase, "term of imprisonment," as including a suspended sentence. (Def. Reply 6-7.) The defendant does not explain why this assists him, and the cases that he cites address when offenses qualify as aggravated felonies subjecting individuals to removal, not whether ICE must wait to remove someone from the United States who has completed his prison term, a proposition that is neither consistent with the law nor common sense.

The defendant also suggests that the Court could effect an end-run around his transfer to ICE custody by ordering that he serve the remainder of his prison "in home confinement." (*Id.* at 7.) That suggestion is legally baseless. As the Government explained, "the only way to grant [the defendant] the relief [he] seeks (*i.e.*, release from prison) under Section 3582(c) is to reduce [his] sentence to time served—in other words, to *permanently* release [him]." *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *3 (S.D.N.Y Apr. 8, 2020) (emphasis in original) (denying motion of HIV-positive inmate); *see also Pourghannad*, No. 13 Cr. 507 (Dkt. 30, at 3) (a compassionate release request is one for "early termination of a lawfully imposed prison sentence"). This is so because while the statute permits a court to "reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances," 18 U.S.C. § 3582(c)(1)(A)(i)," it is the BOP that determines "the place of the prisoner's imprisonment," *id.* § 3621(b), including whether a portion of that term may be served "in home confinement," *id.* § 3624(c)(2). In short, whatever the length of a prison term, "the authority to place a prisoner in home confinement is given to the BOP." *United States v. Miller*, No. 16-20222-1, 2020 WL

---

[1] The defendant cites the Immigration and Nationality Act (Def. Reply 6), not those portions of the United States Code where it is codified, and appears to miscite multiple sections.

1814084, at *2 (E.D. Mich. Apr. 9, 2020); see also *United States v. Urso*, No. 03 Cr. 1382 (NGG), 2019 WL 5423431, at *1 (E.D.N.Y. Oct. 23, 2019).[2]

To be sure, as the Government stated in its opening memorandum, the Court could grant the defendant's motion and also order that he be confined to his apartment for a particular period of time as a special condition of supervised release. But even assuming *arguendo* that this would otherwise be consistent with Section 3553(a) in this case, such a condition would be both effectively unenforceable and effectively meaningless. Indeed, the defendant does not dispute that such a condition would be effectively meaningless if his motion were granted and he were transferred to ICE custody—as he would be. The defendant does dispute that such a condition would be effectively unenforceable, but his argument to the contrary (Def. Reply 8-9) rests on quoting a prior explanation for Guidepost bringing him to a restaurant that is both inconsistent with the record (*see* Dkt. 614, at 3) and irrelevant because the defendant does not propose to re-hire Guidepost or any other firm. Instead, he proposes only to post a few million dollars in real estate and, if ordered, a "cash bond" of an indeterminate amount (Def. Reply 8). That is woefully insufficient. In any event, it does not matter if a condition of home confinement would be effectively enforceable when it would be effectively meaningless.

---

[2] Contrary to the defendant's conclusory assertion (Def. Reply 7), *United States v. Resnick*, No. 14 Cr. 810 (CM), 2020 WL 1651508 (S.D.N.Y. Apr. 2, 2020), is not to the contrary. The court there granted the defendant's motion, ordered his release from prison, and stated that he must follow thereafter the conditions of his "supervised release." *Id.* at *8. And where a court appeared to suggest that the defendant's term of incarceration continued beyond his release from prison, rather than making home confinement a condition of supervised release, the Government sought and received an amended order. *See United States v. Zukerman*, No. 16 Cr. 194 (AT) (Dkt. 118, 119).

## CONCLUSION

For the foregoing reasons and those in the Government's opening memorandum, the defendant's motion should be denied.

Dated: New York, New York
April 14, 2020

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: s/ Daniel C. Richenthal
Daniel C. Richenthal
Janis M. Echenberg
Douglas S. Zolkind
Assistant United States Attorneys
(212) 637-2109/2597/2418

ROBERT ZINK
Chief, Fraud Section
Criminal Division

By: s/ David A. Last
David A. Last
Assistant Chief
(202) 616-5651