# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN
———

MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ANDREA L. ZELLAN

JOSHUA D. KIRSHNER

JACOB KAPLAN

TENY R. GERAGOS
ADMITTED IN NY & CA

STUART GOLD

April 17, 2020

Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY10007

**Re:  *United States v. Ng Lap Seng*, 15-cr-706-3 (VSB)**

Dear Judge Broderick:

We write to alert Your Honor about recent case law supporting our position that 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement could, and should, be excused in the present case.

In *United States v. Haney*, Judge Jed S. Rakoff concluded that § 3582(c)(1)(A)'s exhaustion requirement could be excused "in the extraordinary circumstances now faced by prisoners as a result of the COVID-19 virus and its capacity to spread in swift and deadly fashion." No. 19-cr-541 (S.D.N.Y.), ECF Doc. 27 (4/13/2020 Opinion & Order, attached as Exhibit 1) at 10. In fact, Judge Rakoff went on to conclude that "in the current extreme circumstances," "Congressional intent . . . actually favors such waiver, allowing courts to deal with the emergency before it is potentially too late." *Id.* at 11–12. We respectfully refer Your Honor to pages 7 to 12 of the *Haney* opinion for a thorough discussion of the exhaustion issue. In *United States v. Pinto-Thomaz*, Judge Rakoff excused the failure of the codefendants to satisfy § 3582(c)(1)(A)'s exhaustion requirement "on the reasoning described in *Haney*." No. 18-cr-579 (S.D.N.Y.), ECF Doc. 189 (4/13/2020 Opinion & Order, attached as Exhibit 2) at 3 n.2.

And in *United States v. Smith*, Judge John F. Keenan cited *Haney* and other case law in concluding the following:

[T]he Court is of the opinion that the First Step Act did not empower the Government with the sole authority to decide when and under what conditions

BRAFMAN & ASSOCIATES, P.C.

exhaustion may be waived, and it agrees with certain of its sister courts that judicial
waiver is permissible in light of the extraordinary threat certain inmates face from
COVID-19.  Here, Smith's advanced age and compromised health, combined with
his status as a BOP-designated "high-risk" inmate in a facility with confirmed cases
of COVID-19, justifies waiver of the exhaustion requirement.  "No one anticipated
today's circumstances, where each day that goes by threatens incarcerated
defendants with greater peril.  In essence, the 30-day rule was meant as an
accelerant to judicial review.  The Court is charged with interpreting congressional
intent and it would pervert congressional intent to treat it as a substantial obstacle
to effective judicial review."  In any event, whether there is a waiver or not, as the
great Cardozo observed in a completely different context: "The law has outgrown
its primitive stage of formalism when the precise word was the sovereign talisman,
and every slip was fatal." *Wood v. Duff-Gordon*, 118 N.E. 214, 214 (N.Y. 1917).
In other words, substance takes precedence over form.

No. 12-cr-133 (S.D.N.Y.), ECF Doc. 197 (4/13/2020 Opinion & Order, attached as Exhibit 3) at
10–11 (some citations omitted).

Although Judge Rakoff found that the defendants in *Haney* and *Pinto-Thomaz* had failed
to establish "extraordinary and compelling reasons" for compassionate release, those cases are
materially distinguishable with respect to the "extraordinary and compelling reasons" requirement.
In *Haney*, the defendant was only 61 years old "and—unlike many of the prisoners who have
applied in recent days for release because they suffer from asthma, diabetes, heart disease, or other
deleterious health conditions that make them unusually vulnerable to the effects of COVID-19—
[he was] in reasonably good health."  (Ex. 1 at 12–13).  Indeed, the defendant did not raise any of
his "supposed health problems . . . in his original motion papers, his reply brief, or during oral
argument before the Court, at which time the Court, after questioning whether [his] application
was based on anything else but age, allowed both [him] and his mother to speak, along with his
counsel, and still heard nothing about health problems."  (*Id.* at 13 n.5).  Similarly, in *Pinto-
Thomaz*, one of the codefendants, "by his own admission, [wa]s an otherwise-healthy thirty-four-
year-old man."  (Ex. 2 at 7).  The other codefendant was thirty-five years old and submitted a letter
from a doctor "attesting that the defendant suffers from asthma, or at least did as a child"; but
Judge Rakoff was "somewhat skeptical about whether this condition continue[d] to impact him,"
because (1) his PSR did "not mention asthma or any other respiratory conditions and in fact state[d]
that 'he ha[d] no current health concerns'"; (2) BOP's medical records "also fail[ed] to contain
any reference to asthma"; and (3) "it appear[ed] that [he had] first requested that the BOP amend
his medical records to reflect a history of asthma just over one week [before Judge Rakoff's
opinion]."  (*Id.* at 7–8).

Here, by contrast, Ng is 71 years old and has numerous medical conditions (including
respiratory complications, diabetes, hypertension, chronic kidney disease, and heart
complications) that puts him at a high risk of becoming severely ill or dying from COVID-19.
(ECF Doc. 935 (Mot. for Compassionate Release) at 2, 10 & n.5).  Indeed, the Government

BRAFMAN & ASSOCIATES, P.C.

concedes that: (1) Ng "has heart disease, diabetes, and certain other conditions" that are "undoubtedly real," and (2) "heart disease and diabetes, along with the defendant's age, are COVID-19 risk factors."  (ECF Doc. 936 (Gov't Resp.) at 2, 21, Ex. 1; *see also id.* at 21 (stating that Ng has "potentially serious health conditions")).

We also note that, although Judge Rakoff found that defendant Millul's immigration status and accompanying ICE detainer in *Pinto-Thomas* did not itself "rise to the level of seriousness necessary for a grant of compassionate release" (Exhibit 2 at 10), Judge Rakoff did not find that the ICE detainer precluded him from ordering Millul to home confinement.  Tellingly, Judge Rakoff stated that Millul would be subject to an ICE detainer upon his "release from BOP custody" as opposed to "release from prison."  In the end, Ng has cited statutory authority that Your Honor could order home confinement notwithstanding an ICE detainer (ECF Doc. 937 (Ng's Reply) at 6–7), but the Government has not cited any authority to the contrary (*see* ECF Doc. 938 (Gov't Sur-reply) at 5–7).

Finally, we write briefly to address the Government's statement in its sur-reply that Ng "does not propose to rehire Guidepost or any other [security] firm."  (ECF Doc. 938 at 7).  To the contrary, we outright stated in the motion, "Having private security guards to enforce the home detention would increase Ng's (and the guards') risk of obtaining the coronavirus, but he would hire security guards if that is deemed necessary by the Court."  (ECF Doc. 935 at 18).

Thank you for your time and consideration.

Respectfully submitted,

Benjamin Brafman, Esq.
Jacob Kaplan, Esq.
Stuart Gold, Esq.
Brafman & Associates, P.C.
767 3rd Avenue, 26th Fl.
New York, NY 10017
Tel: (212) 750-7800
Fax: (212) 750-3906