# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN

MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ANDREA L. ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
TENY R. GERAGOS
ADMITTED IN NY & CA
STUART GOLD

April 20, 2020

**BY ECF**
Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

       Re:  *United States v. Ng Lap Seng*, 15-cr-706-3 (VSB)

Dear Judge Broderick:

  We respectfully submit this letter in reply to the Government's April 17, 2020, response letter (ECF Doc. 945) ("Gov't Letter).

  The Government asserts that, because "Congress expressly chose 30 days as the period after which judicial review is available, courts are not free to make a different choice." (Gov't Letter at 2). But the Government overlooks that the "plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (brackets and internal quotation marks omitted). "In such [rare] cases, the intention of the drafters, rather than the strict language, controls." *Id.*; *see also United States v. Kirby*, 74 U.S. 482, 486–87 (1868) ("It will always . . . be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter."); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) ("We turn to the legislative history only when the plain statutory language is ambiguous or would lead to an absurd result." (internal quotation marks omitted)).

  And as discussed in Ng's prior filings and the case law cited therein, a literal reading of § 3582(c)(1)(A)'s exhaustion requirement produces an absurd result here. Given the recent influx of release requests to the BOP based on the COVID-19 pandemic, it is unlikely that the BOP has

BRAFMAN & ASSOCIATES, P.C.

the time or resources to adjudicate § 3582(c)(1)(A) petitions within 30 days of filing.  Tellingly, the BOP has still not decided or even acknowledged Ng's petition that was faxed and mailed to FCI Allenwood Low's warden on March 27, 2020 (more than three weeks ago) and that requested an expedited decision.  (*See* ECF Doc. 935-4 (BOP Petition with Proof of Filing)).  And Ng's case manager still has not returned one of the undersigned's voicemail message that was left more than two weeks ago and that sought the status of the petition.  (*See* ECF Doc. 935 (Amended Mot. at 3)).  When § 3582(c)(1)(A)'s exhaustion requirement was drafted, Congress did not anticipate a global pandemic that would cause the BOP to be swamped with release requests such that it is unable to adjudicate § 3582(c)(1)(A) petitions within 30 days of filing.  Because there is no realistic chance that Ng's petition to the BOP will be adjudicated within the 30-day deadline, "literal application of [a § 3582(c)(1)(A)'s exhaustion requirement] will produce a result demonstrably at odds with the intentions of its drafters" and thus Congress's intent is determinative here.  *See Ron Pair Enterprises*, 489 U.S. at 242; *see also United States v. Haney*, No. 19-cr-541, 2020 WL 1821988, at 3–4 (S.D.N.Y. Apr. 13, 2020) (Rakoff, J.) ("Congressional intent not only permits judicial waiver of the 30-day exhaustion period, but also, in the current extreme circumstances, actually favors such waiver, allowing courts to deal with the emergency before it is potentially too late."); *United States v. Smith*, No. 12-cr-133, 2020 WL 1849748, at 4 (S.D.N.Y. Apr. 13, 2020) (Keenan, J.) ("The Court is charged with interpreting congressional intent and it would pervert congressional intent to treat [the 30-day rule] as a substantial obstacle to effective judicial review.").

The Government asserts that home confinement imposed as a supervised release condition is "not what the defendant seeks."  But Ng is seeking that.  (*See* ECF Doc. 937 (Reply in Further Support of Mot.) at 7 ("[T]o the extent that a court cannot grant home confinement under § 3582(c)(1)(A), Ng requests that he be resentenced to time served and (as one of the many supervised release conditions) be confined to his apartment until December 23, 2021, his projected release date.")).  Whichever way the Government would like to frame the issue, Ng is seeking to be immediately released from prison and be on home confinement until his projected prison release date.  *See* 18 U.S.C. § 3582(c)(1)(A)(i) (under certain circumstances, authorizing courts to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)").

The Government asserts that, in Ng's April 17, 2020, letter (ECF Doc. 944), he "suggests that *United States v. Pinto-Thomaz*, No. 18 Cr. 579 (JSR), --- F. Supp. 3d ---, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020), supports his view that this Court 'could order home confinement notwithstanding an ICE detainer.'"  (Gov't Letter at 2).  We made no such suggestion.  Rather, we were merely anticipating the Government's argument that its position on home confinement *is* supported by the *Pinto-Thomaz* opinion, and were merely pointing out that that argument *is not* support by the *Pinto-Thomaz* opinion.

BRAFMAN & ASSOCIATES, P.C.

As anticipated, the Government argues that its position on home confinement is supported by the *Pinto-Thomaz* opinion:

> Judge Rakoff noted that the BOP had indicated that it would otherwise permit the defendant to serve the remainder of his sentence on home confinement, but that he could not do so, because he was subject to an ICE detainer. *See* [*Pinto-Thomaz*], 2020 WL 1845875, at *4. That is precisely the opposite of the proposition the defendant here is advancing.

(Gov't Letter at 2). But Ng's "proposition" is that he could be on home confinement, without being subject to ICE custody, notwithstanding the BOP's view on the issue. (*See* ECF Doc. 944 at 3). And as discussed on pages 6–7 of Ng's reply in further support of his motion (ECF Doc. 937), the Immigration and Nationality Act and the Judicial Removal Order show that (if he were ordered by the Court to be on home confinement until his projected prison release date) ICE would have no authority to take him into custody until the expiration of the home confinement. The Government has made three filings in opposition to Ng's motion, but has still failed to cite any law or rule that precludes the Court from allowing him to be on home confinement until his projected release date.

The Government cites several opinions in support of its assertion that "a court cannot tell the BOP where a defendant should serve his sentence, whether at home or anywhere else," but those opinions are inapposite. (*See* Gov't Letter at 3). *United States v. Ogarro* concerned the "pre-release custody" provision of 18 U.S.C. § 3624(c)(2), which (unlike the compassionate release provision of 18 U.S.C. § 3582(c)) is a remedy that is "exclusively within the discretion of the BOP." No. 18-cr-373, 2020 WL 1876300, at 6 (S.D.N.Y. Apr. 14, 2020); *see* 18 U.S.C. § 3624(c)(2) ("The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."). In *United States v. Roberts*, the court found that § 3582(c)(1)(A) does not authorize a court to grant "*temporary* release from custody." No. 18-cr-528, 2020 WL 1700032, at 3 (S.D.N.Y. Apr. 8, 2020); *see also id.* (stating that 18 U.S.C. § 3622, the "furlough statute," "gives authority over temporary-release decisions to the [BOP], not the federal courts'" (internal quotation marks omitted)). The court in *United States v. Miller* found that the "pre-release custody" provision of 18 U.S.C. § 3624(c)(2) does not authorize a court to order home confinement. *See* No. 16-cr-20222, 2020 WL 1814084, at 2 (E.D. Mich. Apr. 9, 2020) ("Miller is now seeking release through either home confinement under 18 U.S.C. § 3624(c)(2) or compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). However, since this Court and others have recognized that the authority to place a prisoner in home confinement is given to the BOP, through Attorney General delegation, the Court will solely analyze Miller's eligibility for compassionate release."). In *United States v. Urso*, the court found that it did "not have authority to modify Petitioner's method of incarceration under 28 U.S.C. § 3582(c)(1)(B) or 34 U.S.C. § 60541(g)(1)(C)." No. 03-cr-1382, 2019 WL 5423431, at 1 (E.D.N.Y. Oct. 23, 2019). But § 3582(c)(1)(B) authorizes a court to "modify" an imposed prison term, and Ng is asking that his

BRAFMAN & ASSOCIATES, P.C.

prison term be reduced to home confinement, or be reduced to time served with a supervised release condition of home confinement, under § 3582(c)(1)(A)(i).

The Government also cites 18 U.S.C. § 3621(b). (Gov't Letter at 3). Although § 3621(b) (which is entitled "Place of Imprisonment") gives the BOP exclusive authority to designate places of imprisonment and to transfer prisoners from "one penal or correctional facility to another," the provision says nothing about determining the place of home confinement or transferring defendants from prison to home confinement. *See* 18 U.S.C. § 3621(b).

Thank you again for your time and consideration.

Respectfully submitted,

Benjamin Brafman, Esq.
Jacob Kaplan, Esq.
Stuart Gold, Esq.
Brafman & Associates, P.C.
767 3rd Avenue, 26th Fl.
New York, NY 10017
Tel: (212) 750-7800
Fax: (212) 750-3906
